## 76467. NATIONWIDE MUTUAL INSURANCE COMPANY v. HOLBROOKS et al.
(371 SE2d 252)

BIRDSONG, Chief Judge.

This is an action filed by Nationwide Mutual Insurance Company, the insurer of Apache Transport, Inc. (lessee of truck), to have it declared whether Nationwide is obligated to furnish a defense to Holbrooks (owner/lessor of truck) and his employee Campana (driver of truck), as insureds under Apache Transport's insurance contract with Nationwide. (A third issue concerning coverage by Holbrooks' insurer is not properly before us in this appeal.)

The plaintiffs in the personal injury and wrongful death actions underlying this declaratory action are David Hunt and his wife for his injuries, and Wayne Abbs, father of deceased Amanda Abbs and in-

jured Kimberly Abbs who were stepdaughters of Hunt and were riding with him when Campana, driving Apache Transport's leased truck, allegedly crossed the centerline and collided with David Hunt's vehicle. In the declaratory action, these plaintiffs countered for a determination that (aside from any question involving insurance coverage), Apache Transport is vicariously liable for Campana's acts as a matter of law, pursuant to governing regulations of the Interstate Commerce Commission (ICC).

The principal issue centers around Nationwide's contention that at the time of the collision Campana, who was "bobtailing" (driving a truck tractor with trailer removed), was on a personal mission and was not engaged in the business of Apache Transport.

In rendering summary judgment against Nationwide on all the issues formed, the trial court in a well-considered order, found as pertinent, (1) beyond any issue of material fact, Campana was at the time of the collision driving the truck pursuant to permission of Apache Transport; (2) Campana and Holbrooks are therefore insureds under Apache Transport's policy with Nationwide; and (3) pursuant to statutory and regulatory provisions under the federal Interstate Common Carrier Act, the motor carrier is required to assume full direction, control and responsibility of leased vehicles for the protection of the public, and therefore, Apache Transport is vicariously liable for the actions of Holbrooks and driver Campana.

Nationwide appeals, enumerating three errors, which include a contention that any government regulations governing interstate motor carriers cannot expand the scope of a carrier's liability beyond that of respondeat superior only. *Held*:

1. The trial court did not err in finding, beyond any genuine issue of material fact, that Campana had the permission of Apache Transport to drive the truck, and was driving the truck pursuant to that permission at the time of the collision.

The following are the facts according to appellant Nationwide. "On or about February, 1986, Burris M. Holbrooks, Appellee herein, purchased a 1978 International truck. . . . That next month, Mr. Holbrooks entered into a lease agreement with Appellee, Apache Transport, Inc., to lease the 1978 International truck to Apache Transport. . . .

"On or about the first of February, 1987, Defendant Burris M. Holbrooks hired a driver by the name of Robert F. Campana to drive one of Holbrooks' trucks for him, said truck being under lease to Apache Transport, Inc. . . .

"Around lunchtime on February 13, 1987, Robert F. Campana went to the home of Burris Holbrooks, picked up one of Holbrooks' trucks (the 1978 International), and drove it to Apache Transport, Inc. in Monroe, Georgia where he was to take a road test and a writ-

ten test pursuant to Georgia law and I.C.C. regulations. . . .

"Between 2:30 p.m. and approximately 5:45 p.m., Driver Robert Campana took the road test and a written test at Apache Transport and completed all appropriate paperwork to be approved to drive Holbrooks' tractor pursuant to the lease between Holbrooks and Apache, I.C.C. regulations and Georgia law. . . .

"At approximately 5:45 p.m. on February 13, 1987 Tommy Wiggins, an employee of Apache Transport, gave Robert Campana an assignment to pick up a loaded trailer in Atlanta on the following Sunday and deliver it to Louisville, Kentucky by 8:00 a.m. the following Monday. . . . Campana left Apache Transport driving . . . Holbrooks['] tractor to his home in Westminister, South Carolina without a trailer attached (i.e., 'bobtailing') at approximately 6:00-6:15 p.m. on the evening of February 13, 1987 with nothing left to do for Apache Transport, Inc. until he departed for Louisville, Kentucky. . . . The purpose for which Robert Campana left Apache Transport was to go home, eat supper with his wife and child, get some sleep and pick up some bed sheets and a CB radio. . . . No one at Apache Transport, Inc. attempted to instruct Campana as to how he should schedule his time between Friday afternoon and Monday morning. . . .

"Campana never asked anyone at Apache Transport whether he could drive the 1978 truck to his home; he simply told Warren Greer [Apache Transport's dispatcher] where he was going because Burris Holbrooks had already given Campana permission to keep the truck at home. . . .

"During the evening hours of February 13, 1987, the 1978 International tractor driven by Robert F. Campana and owned by Burris M. Holbrooks collided with another vehicle in Franklin County, Georgia while Robert Campana was en route home. . . ."

Beyond this statement of facts by Nationwide, the record establishes without genuine issue that after Campana took the road test at Apache Transport's facilities in Monroe, he had no way to get to his home other than to drive the truck. According to Apache Transport's dispatcher, Campana asked Apache Transport's dispatcher if he could drive the truck home to pick up sheets and have dinner, and the dispatcher told him, "I [don't] care"; when Campana asked him when he should pick up the load in Atlanta for delivery at Louisville, Kentucky Monday morning, the dispatcher told him "the location where the trailer is at Meade Packaging is open 24 hours a day seven days a week." The dispatcher testified, "I didn't care when he picked it up as long as he was in Louisville, Kentucky, Monday morning at 6:00 a.m. He then told me that he was going home . . . to be with his wife and eat dinner. And [he] asked me could he pick it up over the weekend. I said yes. And then I reiterated again I don't care when you pick it

up. . . ." Apache Transport's dispatcher stated he "personally [had no] objection" to Campana driving the truck to his home in Toccoa, that he knew Campana wanted to go home and see his wife and have dinner and get some rest, and that he did not object to that plan and did not tell Campana he could not drive the truck to his home.

Moreover, the president of Apache Transport, and owner of all the company stock, testified in deposition that nothing would be unusual about a driver going to his home before he left on an actual trip to pick up the trailer, except that "he [would be] doing it at his own discretion [and] not at ours." Apache Transport's president also testified that so far as he knew the company did not attempt to restrict Campana from driving the truck home that afternoon; that no effort was made by Apache Transport to limit where Campana drove the truck over the weekend or tell him he could not drive him home, although the company could have restricted his use if it had wanted to.

Holbrooks, the owner/lessor of the truck testified it was ordinary practice for drivers to take the trucks home with them when they were not in use by the company, and that the drivers "always took them home with them if a truck didn't need working on," because Holbrooks had no need for the trucks at his house and, "They're driving for Apache. They need the truck with them."

Appellant Nationwide contends that being outside the scope of his employment with Apache Trucking, Campana's driving the vehicle home was not with Apache Transport's permission, principally because no one specifically told him how he should schedule his time; no one told him to drive it home; and he never asked permission to do so but simply announced he would do so. Nationwide contends, in re *Western Cas. &c. Co. v. Strozier*, 67 Ga. App. 41 (1) (19 SE2d 433), that wherever the employee is outside the scope of his employment he necessarily is outside the employer's consent or permission. Obviously, however, this cannot be true where the employer has given the employee permission to use the vehicle outside the strict scope of employment. In *Western Cas. &c. Co.*, the employee was under an express prohibition of use which outweighed any general implied consent to use the truck; since the particular use was expressly prohibited, it assuredly was not used "with permission." The statement in the case that "the implied consent for the use of the truck by an employee extends only to the scope of the employment" would logically apply at best only where there is no particular express or implied consent to use it outside the strict scope of employment.

In this case, even assuming Campana's driving the truck home was outside the scope of his employment, without any issue Campana was at the very least in fact given implied permission, and was authorized to drive this truck home; for he fully advised the company dispatcher that was what he intended to do and this plan was in fact

approved, he was not told he could not do it, and no restrictions were placed on his expressed intent driving it home. In the plainest sense of the word "permission," he was in fact permitted to drive the truck home because Apache Transport knowingly allowed him to do it. That he might have done so, in the words of Apache's president, "at his own discretion," does not make it any the less an act permitted by Apache Transport; to the contrary, these words prove he had permission to use his discretion on this point.

Nationwide's contention that "permission" is irrelevant in this case because only one person (Holbrooks, the owner/lessor) had authority to grant Campana permission to drive the truck home, and that this endeavor was beyond Apache Trucking's concern, is plainly without merit. Nationwide seems to be suggesting it was none of Apache Trucking's business where Campana took this truck or what he did with it when he was not actually using it in performance of Apache's business. We do not think Apache would make such an assertion outright, considering the strict ICC requirements for operation and continued certification of Apache's carrier business, in particular the regulation at 49 CFR 1057.12 that the carrier's lease must require it to have "exclusive possession, control and use of the equipment for the duration of the lease," and to "assume complete responsibility for the operation of the equipment for the duration of the lease." See generally Division 3, infra.

2. The trial court did not err in finding Holbrooks and Campana to be insured under Apache Transport's policy with Nationwide. The pertinent policy provisions are: "D. WHO IS INSURED 1. You are an insured for any covered auto. 2. *Anyone else is an insured while using with your permission* a covered auto you own, hire or borrow except: [three exceptions not relevant here]. . . . 4. The owner or anyone else from whom you hire or borrow *a covered auto which is not a trailer* is an insured *while the covered auto: a. Is being used exclusively in your business as a trucker.* . . . 5. Anyone liable for the conduct of an insured described above is an insured but only to the extent of that liability. . . ." (Emphasis supplied.)

Nationwide argues that Item D (4) limits or excludes coverage of a vehicle driven "bobtail," i.e., with trailer removed, unless it was "being used exclusively in [Apache Trucking's] business as a trucker," and therefore that D (4) is a limiting or "narrowing" provision that removes any coverage of Campana as a permissive user under Item D (2).

Citing *Aetna Cas. &c. Co. v. Fairchild*, 620 FSupp. 1245, the trial court held that D (4) is not an exclusionary or limiting provision; that if a person falls within *any one* of the five subsections re "Who is Insured," which include D (2) and D (4), then such person is an insured under the policy.

We agree with the assessments of the trial court and *Aetna Cas. &c. Co. v. Fairchild*, but for stronger reasons than they offer. Nationwide contends Item D (4) "in *clear and precise* language, narrows [permissive use] coverage where the hired auto is not a trailer [to one that is used] exclusively in the business of Apache as a trucker." But the clear and precise language of D (4) proves that it does not serve to limit otherwise permissive use if the driver is "bobtailing," because it does not contain the word "only." While clearly it says the described person driving a vehicle that is not a trailer *is* covered if the vehicle is being used exclusively in Apache's trucking business, it does not say such person is covered *only* if the vehicle is used exclusively in Apache's business. Therefore, there is no syntactic basis upon which to conclude Item D (4) limits, narrows, or excludes the permissive use coverage granted by Item D (2).

More to the point, however, is a fact overlooked by all, which is that Item D (4) is not a provision targeted at all persons, including permissive users, who drive a covered vehicle "bobtail." Instead it extends coverage to and refers only to *"[t]he owner or anyone else from whom you hire or borrow* a covered auto which is not a trailer. . . ."* (Emphasis supplied.) Thus, D (4) might apply to the owner/lessor Holbrooks (but he is insured under Item D (5), and as we indicated above, D (4) would not by its terms serve to make him an insured *only if* he used it exclusively in Apache's trucking business); but it does not apply at all to Campana because Apache did not hire or borrow the vehicle from Campana.

Under the clear terms of the provisions themselves, we find it unnecessary to advert to rules of construction of insurance contracts used in the case of ambiguities or in interpreting exclusions. Campana is clearly an insured under D (2), for he used the vehicle with Apache's permission, and Item D (4) does not apply to him at all, and certainly not to exclude him. The owner Holbrooks is also an insured under Item 5 to the extent he is liable for the conduct of the insured Campana; but Item D (4) in particular does not exclude him because it does not provide that an owner is insured *only* if a bobtail vehicle is used exclusively in Apache's business as a trucker.

3. The third issue does not directly involve insurance coverage. The appellees contend, and the trial court found, that Apache Trucking is vicariously liable for the conduct of Campana, owing to certain statutes and regulations of the ICC which require the carrier to " 'assume complete responsibility for the operation of the equipment for the duration of the lease.' " *Price v. Westmoreland*, 727 F2d 494 (5th Cir. 1984); *Simmons v. King*, 478 F2d 857 (5th Cir. 1973). Georgia courts have found federal law persuasive upon the issue of the effect of ICC laws and regulations upon motor carrier liability. See *Farmer v. Ryder Truck Lines*, 245 Ga. 734 (266 SE2d 922). In *Price*, supra at

496, in finding the carrier liable as a matter of law, the federal court said: "In order to protect the public from the tortious conduct of judgment-proof operators of interstate motor carrier vehicles, Congress in 1956 amended the Interstate Common Carrier Act to require a motor carrier to assume full direction and control of leased vehicles. 49 USC §§ 10927 (a) (2) and 11107 (a) (4). . . . Pursuant to these regulations the ICC has promulgated written lease requirements for interstate carriers . . . which require the carrier lessee to 'assume complete responsibility for the operation of the equipment for the duration of the lease.' 49 C.F.R. § 1057.12 (d) (1). These regulations are valid and constitutional, [cit.] In *Simmons v. King*, [supra at pp. 860, 866], we held that they preempt state law in tort actions in which a member of the public is injured by the negligence of a motor carrier's employee while operating an interstate carrier vehicle, observing that 'it is critical that ICC regulations and the lease mandated by them have supreme controlling significance. . . .' *Simmons* held that 'the ICC carrier's liability for equipment and drivers covered by leasing arrangements is not governed by the traditional common law doctrine of master-servant relationships and respondeat superior.' 478 F2d at 867. The *Simmons* court went on to hold that under the statutorily mandated terms of the lease, the carrier lessee had 'assumed exclusive possession, control, and use of the vehicle and responsibility to the public, [the driver] became his statutory employee, and as such [the carrier] was vicariously liable *as a matter of law* for the negligence of [the driver].' "

Apache's lease places upon it the legal obligation to maintain liability insurance for the protection of the public. Provisions similar in language and identical in design to the federal law exist in Georgia law. At OCGA § 46-7-12, the Georgia Motor Carriers Act provides: "(a) No certificate [of public convenience and necessity required for operation of a motor carrier in this state, see § 46-7-3 et seq.] shall be issued or continued in operation . . . [i]n cases of vehicles transporting freight, [unless] the applicant or holder shall give bond, with adequate security . . . for the protection of the public against injuries proximately caused by the negligence of such motor carrier, its servants, or its agents. . . . (c) The commission may, in its discretion, allow the holder of such certificate to file, in lieu of such bond, a policy of indemnity insurance in some indemnity insurance company authorized to do business in this state, which policy must substantially conform to all of the provisions of this article relating to bonds. Such policy must also be approved by the commission. . . . (e) It shall be permissible under this article for any person having a cause of action arising under this article in tort or contract to join in the same action the motor carrier and its surety, in the event a bond is given. If a policy of indemnity insurance is given in lieu of bond, it shall be per-

missible to join the motor carrier and the insurance carrier in the same action, whether arising in tort or contract."

Under the ICC laws and regulations, the driver Campana became the statutory employee of Apache Trucking, and Apache Trucking is fully responsible to the public for the operation of the truck he drove. *Farmer v. Ryder Truck Lines*, supra, pp. 736-739. Under the Georgia code section just quoted, we are satisfied the public policy of this state independently intends the carrier to bear full responsibility to the public for the operation of this truck. The trial court did not err in finding Apache Trucking to be vicariously liable as a matter of law for the actions of its statutory employee, Campana (*Farmer v. Ryder Truck Lines*, supra), in operation of this truck. *Curtis, Inc. v. Kelley*, 167 Ga. App. 118 (305 SE2d 828) does not require a contrary result, for it does not consider this issue.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JULY 5, 1988.

*J. Edward Allen, Sandra M. Baumwald*, for appellant.

*Alton M. Adams, Allen Broxton, Andrew J. Hill, Jr., John A. Dickerson, Albert E. Jones, Stephen E. Beard, Rebecca Frazier, Dennis J. Webb, Samuel G. Church, George W. Wills, Jr., T. Michael Tennant*, for appellees.