## A09A2382. AEQUICAP INSURANCE COMPANY v. CANAL INSURANCE COMPANY et al.

### (693 SE2d 863)

BERNES, Judge.

This is a declaratory judgment action in which Aequicap Insurance Company appeals the trial court's order granting partial summary judgment in favor of appellee Randall Coleman O'Berry. The trial court determined that a MCS-90 endorsement[1] to Aequicap's insurance policy provided coverage for any judgment entered upon O'Berry's personal injury claim against Aequicap's insured, CDS Transport, Inc., and its leased driver, Jeffrey Floyd.[2] Aequicap contends that the trial court erred in holding that the MCS-90 endorsement provided coverage and that Floyd was CDS Transport's statutory employee.[3] For the reasons that follow, we affirm.

On appeal, the trial court's grant of summary judgment is viewed de novo to determine whether the evidence, viewed in the light most favorable to the nonmovant, demonstrates any genuine issue of material fact. See *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). "Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." Id.

The undisputed facts show that Aequicap's insured, CDS Transport, was a for-hire motor carrier operating under the authority of the Interstate Commerce Commission. Jeffrey Floyd was a truck driver who owned a tractor-trailer rig and leased it to interstate motor carriers for use in transport operations. On February 10, 2006, CDS Transport and Floyd entered into a lease agreement, whereby CDS Transport leased Floyd's truck and driving services for its operations. On or about March 7, 2006, while Floyd was on duty and

---

[1] As explained infra, a MCS-90 endorsement is a standard endorsement required to be included in a commercial motor carrier's insurance policy by 49 CFR § 387.15.

[2] The trial court also granted summary judgment in favor of appellee Canal Insurance Company, ruling that Canal's nontrucking insurance policy issued to the driver, Jeffrey Floyd, did not provide coverage for O'Berry's claim. Aequicap does not challenge the trial court's ruling in favor of Canal in this appeal.

[3] Aequicap also contends that the trial court erred in failing to consider CDS Transport's obligation to reimburse it for any amounts paid under the MCS-90 endorsement. But Aequicap failed to file a cross-claim and motion for summary judgment raising this separate issue, and no ruling on the issue was obtained. Because the issue was not properly raised and ruled upon in the proceedings below, it cannot be addressed in this appeal. See *Kirkland v. Earth Fare*, 289 Ga. App. 819, 821 (1) (658 SE2d 433) (2008) ("[W]here a trial court does not rule on an issue, it remains outside the jurisdiction of this Court and we cannot consider it, especially if the issue is one of summary judgment.") (punctuation and footnotes omitted).

driving for CDS Transport, his truck collided with the truck driven by O'Berry and an automobile driven by a third party.

At the time of the automobile accident, CDS Transport had in place an insurance policy issued by Aequicap. The Aequicap policy provided $1 million in collision coverage for trucks owned by CDS Transport, required CDS Transport to obtain Aequicap's pre-approval for newly placed drivers, and excluded coverage for automobiles leased with a driver. Significantly, the Aequicap policy also contained a MCS-90 endorsement, in accordance with the Federal Motor Carrier Safety Regulations ("FMCSR"), 49 CFR § 387.15, which pertinently provided as follows:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy* and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that *no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment,* within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect

as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(Emphasis supplied.)

After the accident was reported to Aequicap, the insurer issued two successive reservation of rights letters that questioned whether coverage was available under its insurance policy since the truck was not listed on the schedule of covered vehicles, Floyd was not a pre-approved driver, and the accident allegedly was not timely reported.

Floyd was insured under a nontrucking policy issued by Canal Insurance Company. Canal's policy contained an exclusion from coverage that applied when the automobile was used "in the business of anyone to whom the automobile [was] rented or leased." O'Berry was separately insured under an uninsured/underinsured motorist (UIM) policy issued by Capital City Insurance Company.

Subsequently, in February 2007, O'Berry filed a personal injury action against Floyd, seeking to recover damages allegedly sustained as a result of the automobile accident. In turn, Floyd filed a third-party complaint against CDS Transport, alleging that it was liable for contribution and/or indemnity for O'Berry's claim. Canal filed the instant declaratory judgment action, naming O'Berry, Floyd, CDS Transport, Aequicap, and Capital City Insurance as defendants and seeking a declaration as to the parties' rights and obligations regarding coverage under the insurance policies. O'Berry filed a cross-claim against Aequicap, alleging that it was responsible to pay any judgment entered in the underlying personal injury action, based upon the MCS-90 endorsement of its policy. O'Berry also filed a motion for partial summary judgment, asserting that the MCS-90 endorsement imposed liability upon Aequicap for any judgment in the underlying action, rendered Floyd the statutory employee of CDS Transport at the time of the accident, and rendered CDS Transport vicariously liable for O'Berry's damages. Following a hearing, the trial court granted O'Berry's motion. We agree with the trial court's ruling.

The MCS-90 endorsement contained in Aequicap's policy applies in this case. A brief overview of the history of the FMCSR and ICC federal regulations is helpful in explaining the purpose and applica-

bility of the MCS-90 endorsement:

> In the past, the use by truckers of leased or borrowed vehicles led to a number of abuses that threatened the public interest and the economic stability of the trucking industry. In some cases, ICC-licensed carriers used leased or interchanged vehicles to avoid safety regulations governing equipment and drivers. In other cases, the use of non-owned vehicles led to public confusion as to who was financially responsible for accidents caused by those vehicles.
>
> In order to address these abuses, Congress amended the Interstate Commerce Act to allow the ICC to prescribe regulations to insure that motor carriers would be fully responsible for the operation of vehicles certified to them. 49 USC § 304 (e) (1956). . . . In response to this mandate, the ICC promulgated regulations requiring that every lease entered into by an ICC-licensed carrier must contain a provision stating that the authorized carrier maintain "exclusive possession, control, and use of the equipment for the duration of the lease," and "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 CFR § 1057.12 (c). Further, the ICC require[d] that all ICC-certified carriers maintain insurance or other form of surety "conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles" under the carrier's permit. 49 CFR § 1043.1 (a).
>
> To assure compliance with this requirement, the ICC developed a form endorsement to be included in insurance policies of carriers who use leased vehicles to transport property under ICC certificate.

(Citations and punctuation omitted.) *Empire Fire &c. Ins. Co. v. Guaranty Nat. Ins. Co.*, 868 F2d 357, 362-363 (III) (A) (10th Cir. 1989). See also *Price v. Westmoreland*, 727 F2d 494, 496 (II) (5th Cir. 1984).

Thereafter, the Motor Carrier Act of 1980, 49 USC § 10101 et seq., and the regulations promulgated thereunder were enacted. The regulations substantially mirrored the ICC regulations. See 49 CFR §§ 376.12 (j); 387.15; *Armstrong v. United States Fire Ins. Co.*, 606 FSupp.2d 794, 808-809 (VI) (C) (1) (E.D. Tenn. 2009). The FMCSR also imposed general leasing requirements that required interstate motor carriers to maintain written leases containing provisions that "the authorized carrier lessee shall have exclusive possession, con-

trol, and use of the equipment for the duration of the lease" and that "the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease." 49 CFR § 376.12 (c) (1). See also 49 CFR § 376.11. The FMCSR further set forth a motor carrier endorsement form, known as the MCS-90, required to be attached to the motor carrier's insurance policy.[4] See 49 CFR § 387.15; *Armstrong*, 606 FSupp.2d at 808-809 (VI) (C) (1).

> It is well-established that the primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers. In order to accomplish this purpose, the endorsement makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy.

(Citations and punctuation omitted.) *Armstrong*, 606 FSupp.2d at 808-809 (VI) (C) (1). See also *Empire Fire &c. Ins. Co. v. J. Transport, Inc.*, 880 F2d 1291, 1298 (11th Cir. 1989) ("It is clear that [the] ICC regulations require the carrier, or its certified insurer, to protect the public from loss due to negligent acts[.]") (citations omitted); *Hot Shot Express v. Assicurazioni Generali, S.P.A.*, 252 Ga. App. 372, 373-374 (556 SE2d 475) (2001) ("Under this regulatory scheme, the motor carrier is fully responsible to the public for the operation of its leased vehicles[.]") (footnote omitted); *Nationwide Mut. Ins. Co. v. Holbrooks*, 187 Ga. App. 706, 712 (3) (371 SE2d 252) (1988) (the ICC regulations "preempt state law in tort actions in which a member of the public is injured by the negligence of a motor carrier's employee while operating an interstate carrier vehicle") (citation and punctuation omitted).

The undisputed facts established that O'Berry was a member of the public who was allegedly injured in an automobile accident caused by Floyd's negligent operation of the truck in the course of CDS Transport's motor carrier business. Based upon the foregoing, it is clear that O'Berry was a member of the public whom the MCS-90 endorsement was intended to protect. Consequently, the MCS-90 endorsement, attached to Aequicap's policy in compliance with the required statutory provisions of 49 CFR §§ 376.12 (c) (1)

---

[4] Georgia law imposes a similar requirement that motor carriers maintain a certificate of indemnity insurance, which "must provide for the protection, in case of passenger vehicles, of passengers and the public against injury proximately caused by the negligence of such motor carrier, its servants, or its agents[.]" OCGA § 46-7-12 (a).

and 387.15, applies to cover O'Berry's damages claim. See *Hot Shot Express*, 252 Ga. App. at 373-374; *Holbrooks*, 187 Ga. App. at 712 (3).

Moreover, based upon the regulatory requirements that the motor carrier assume exclusive possession, control, and use of the leased truck and maintain responsibility to the public, CDS Transport is vicariously liable as a matter of law for Floyd's negligence. Accordingly, Floyd is deemed to be CDS Transport's "statutory employee" for purposes of carrying out the intent of the regulations. See *Price*, 727 F2d at 496-497 (II); *Simmons v. King*, 478 F2d 857, 867 (5th Cir. 1973); *Kolencik v. Progressive Preferred Ins. Co.*, Civil Action No. 1:04-CV-3507-JOF, 2006 U. S. Dist. LEXIS 24855, at *14-17 (II) (A) (N.D. Ga. Mar. 17, 2006); *Hot Shot Express*, 252 Ga. App. at 374; *Holbrooks*, 187 Ga. App. at 712 (3).[5]

Aequicap nevertheless contends that the terms of its insurance policy did not designate Floyd or his truck for coverage and that the lease agreement between CDS Transport and Floyd failed to comply with the regulatory requirements. The lease agreement provided that Floyd was working as an independent contractor and "[i]f an accident claim arises out of driver [Floyd's] negligence[,] the full responsibility of the claim will be [upon Floyd]." Based upon the conflicting provisions of the policy and the lease agreement, Aequicap argues that enforcement of the MCS-90 endorsement is precluded. Aequicap's argument, however, is without merit.

By its unambiguous terms, as emphasized above, the MCS-90 endorsement expressly provides that Aequicap is liable for the payment of any judgment entered in the underlying personal injury action, even if the vehicle was not specifically designated in the policy. The endorsement further provides that no violation of the endorsement's provisions can relieve Aequicap of its liability. The parties could not avoid responsibility to comply with the applicable regulations by incorporating conflicting terms in its lease. "[I]t is critical that ICC regulations and the lease mandated by them have supreme controlling significance." (Punctuation and footnote omitted.) *Price*, 727 F2d at 496 (II). See *Simmons*, 478 F2d at 866. The purpose of the federal regulations and endorsement are accomplished by "reading out" those provisions or clauses that conflict with or limit the ability of a third party member of the public to

---

[5] In the context of workers' compensation and workplace accidents involving co-workers, the "statutory employee" analysis does not apply. See 49 CFR § 376.12 (c) (4); *Simpson v. Empire Truck Lines*, 571 F3d 475, 476-478 (II) (5th Cir. 2009); *Judy v. Tri-State Motor Transit Co.*, 844 F2d 1496, 1499-1502 (II) (11th Cir. 1988); *Clark v. Roberson Mgmt. Corp.*, Case No. 5:03CV274 (DF), 2005 U. S. Dist. LEXIS 46972, at *7-10 (III) (A) (1) (M.D. Ga. Jan. 11, 2005); *Penn v. Virginia Intl. Terminals*, 819 FSupp. 514, 521-523 (E.D. Va. 1993). The instant case, however, does not involve an injury sustained by a co-worker, but rather an injury sustained by a member of the public.

recover for his loss. See *T.H.E. Ins. Co. v. Larsen Intermodal Svcs.*, 242 F3d 667, 673 (II) (A) (1) (5th Cir. 2001); *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F2d 604, 611 (III) (B) (2) (5th Cir. 1989), recalled and modified on other grounds at 901 F2d 45 (5th Cir. 1990). Accordingly, the federal regulations and terms of the MCS-90 endorsement control the resolution of this issue. Aequicap is required to pay, within its policy limits, any final judgment recovered by O'Berry in the underlying personal injury action. The trial court's decision was proper.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED MARCH 24, 2010 —
RECONSIDERATION DENIED APRIL 7, 2010 — 

*Smart & Harris, Don Smart, Monica B. Patel*, for appellant.
*Gilliland, Ratz & Browning, Robert W. Browning, Douglas L. Gibson, Adam Ferrell*, for appellees.