### A10A0148. PN EXPRESS, INC. v. ZEGEL et al.

(697 SE2d 226)

MIKELL, Judge.

PN Express, Inc., appeals from the judgment entered on a jury verdict in the amount of $11,499,740[1] in favor of William Eastman Zegel, his wife Sonya Thorne-Zegel, and their young daughter, Lillian Thorne Zegel, by her father as next friend and natural guardian, in this personal injury case arising out of an accident involving a commercial tractor-trailer. PN Express challenges the denial of its motion for directed verdict and argues that the trial court erred in instructing the jury on the doctrine of statutory employment, among other enumerated errors. For the reasons set forth below, we affirm.

1. A motion for directed verdict "may be granted only when no conflict exists in the evidence and the evidence presented, with all

---

[1] The verdict was reduced by the amount of driver Mile Surlina's insurance company's pre-trial settlement of $740,000.

reasonable inferences therefrom, demands a particular verdict."[2] On appellate review of the denial of a motion for directed verdict, "we construe the evidence in the light most favorable to the verdict and resolve any doubts or ambiguities in favor of the verdict,"[3] and "[w]e review the trial court's denial of a motion for a directed verdict using the 'any evidence' standard."[4]

So construed, the record reflects that on May 11, 2007, a loaded tractor-trailer owned and driven by Mile Surlina crashed into the Zegels' automobile, resulting in severe and permanent injuries to all three occupants. At the time of the crash, Surlina's tractor-trailer bore the logo and DOT numbers of PN Express, an Illinois-based motor common carrier.

PN Express was owned by Nikola Preradovic, and its business was managed by his son-in-law, Dragan Soldat. Although it was undisputed that Surlina was hired by PN Express as a driver, the evidence was conflicting as to the date he had been hired. Surlina testified that Soldat hired him on May 1, 2007, and that Soldat knew that Surlina owned and drove his own truck. Soldat testified, on the other hand, that PN Express did not hire Surlina until May 18, 2007, after the accident at issue had already occurred. Because PN Express was unable to produce the Driver Qualification file it had maintained on Surlina, which would have provided documentary evidence of Surlina's exact date of hire by PN Express, the trial court charged the jury on spoliation of evidence, which gives rise to a rebuttable presumption that the evidence lost would have been harmful to PN Express. PN Express has not challenged this jury charge on appeal.

In addition, Surlina testified that he and Soldat entered into an oral lease agreement between Surlina and PN Express. Soldat gave Surlina PN Express placards containing the PN Express logo and DOT number to place on his truck. Shortly thereafter, Surlina had the PN Express logo and DOT number hand-painted on his truck; and on May 3, 2007, he showed the result to Soldat, who approved. The PN Express logo and DOT numbers were displayed on the truck at the time of the accident on May 11, 2007.

In May 2007, a written contract was in effect between PN Express and Patterson Freight Systems, Inc., pursuant to which PN Express, as carrier, agreed to haul freight for Patterson, as broker. The agreement contemplated that Patterson would arrange for transportation of freight for shippers and then broker those shipments to PN Express for hauling. At the time Surlina was hired, Soldat told him

---

[2] (Citation omitted.) *Clarendon Nat. Ins. Co. v. Johnson*, 293 Ga. App. 103, 104 (666 SE2d 567) (2008).

[3] (Citation omitted.) Id.

[4] (Footnote omitted.) *Crosby v. Kendall*, 247 Ga. App. 843, 847 (2) (545 SE2d 385) (2001).

that he would be driving for PN Express and for Patterson. At some time before the accident occurred, Soldat advised Ned Stojkovic, a contractor/broker for Patterson, that Surlina was authorized to negotiate and act on behalf of PN Express with respect to shipments brokered by Patterson, including negotiating shipment rates.

On May 8 and 9, 2007, Patterson contracted with three different shippers to ship freight from Illinois to Florida. Surlina picked up the loads in his truck, which displayed the PN Express sign, in order to make the deliveries in Florida. The accident occurred while Surlina was en route to Florida with this load. Soldat was aware that Surlina was hauling this load in Surlina's truck, which bore PN Express's logo and DOT number; and Soldat was in daily contact with Surlina by cell phone from May 1, 2007, through and after the date of the accident, May 11, 2007.[5]

PN Express contends that the trial court erred in denying its motion for directed verdict because the evidence was insufficient to show that an oral lease existed between Surlina, the driver and owner of the truck, and PN Express. However, as noted above, evidence was adduced at trial which authorized the jury to conclude that Surlina and PN Express had entered into an oral lease of Surlina's truck, based on Surlina's admission that such a lease was in effect, and on testimony that Surlina's truck carried the PN Express logo. Further, evidence at trial which showed that Surlina had been hired by PN Express on May 1, 2007, and that Surlina was in constant telephone contact with Soldat, PN Express's manager, authorized the jury to conclude that Surlina was PN Express's employee and was about the business of PN Express when the accident occurred.

PN Express's reliance on *Clarendon*[6] is misplaced, because that case is distinguishable on its facts from the case at bar. In that case, no evidence of a lease arrangement was adduced: the driver denied that he had entered into a lease with the defendant motor carrier; there was no evidence that the defendant motor carrier knew that the driver had been hired to pick up loads; and the defendant's logo and DOT numbers were not displayed on the driver's truck.[7] Thus, this Court concluded that "[b]ased on the record before us, we cannot find any evidence to support the conclusion that [the driver] leased himself or his truck to . . . defendant for the trip involved in the accident."[8]

---

[5] The parties stipulated to the admission of telephone company records showing the cell phone calls.

[6] Supra.

[7] Id. at 107.

[8] Id. at 109 (1) (a).

2. PN Express asserts that the trial court erred in instructing the jury on the doctrine of "statutory employment," arguing that this doctrine contravenes Georgia law of agency and respondeat superior. "In reviewing an allegedly erroneous jury instruction, we apply the 'plain legal error' standard of review."[9]

Over objection, the trial court instructed the jury, in pertinent part, as follows:

> Federal motor carrier regulations require a motor carrier utilizing leased or rented equipment to have exclusive possession, control and use of the equipment for the duration of the lease. The lease shall further provide the authorized carrier shell [sic] assume complete responsibility for the operation of the equipment during the duration of the lease. Under this regulatory scheme, the motor carrier is fully responsible to the public for the operation of its leased vehicles, regardless of whether the vehicles are used in the scope of the carrier's business or whether the lessor or the driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee.

PN Express complains that the last sentence of this charge imposes strict vicarious liability for the negligence of the driver who owns and operates the tractor-trailer, regardless of whether the driver was operating under the motor carrier's control.

(a) Federal motor carrier regulations required PN Express, as a motor carrier utilizing leased or rented equipment, such as the tractor-trailer involved in the accident at issue here, to "have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."[10] Citing *Nationwide Mut. Ins. Co. v. Holbrooks*,[11] this Court noted in *Hot Shot Express v. Assicurazioni Generali*[12] that "[u]nder this regulatory scheme, the motor carrier is fully responsible to the public for the operation of its leased vehicles, regardless of whether the vehicles are used in the scope of the carrier's business."[13] Our Supreme Court

---

[9] (Citation, punctuation and footnote omitted.) *Horton v. Hendrix*, 291 Ga. App. 416, 418 (1) (662 SE2d 227) (2008).

[10] 49 CFR § 376.12 (c) (1).

[11] 187 Ga. App. 706 (371 SE2d 252) (1988).

[12] 252 Ga. App. 372 (556 SE2d 475) (2001).

[13] (Footnote omitted.) Id. at 373-374, citing *Holbrooks*, supra at 713 (3).

quoted this language from *Hot Shot* with approval in *Coleman v. B-H Transfer Co.*[14] This doctrine of strict vicarious liability imposed upon the lessee motor carrier is known as "statutory employment."[15]

Contending that the doctrine of statutory employment has been vitiated by 1986 and 1992 amendments to federal trucking regulations,[16] PN Express urges this Court to overrule *Holbrooks*.[17] We decline to do so, however, in light of our Supreme Court's decision in *Coleman*,[18] which is binding precedent.[19] In that case, Coleman, the driver and owner of a tractor-trailer under contract to B-H Transfer Company, attempted to recover from B-H Transfer for injuries incurred in a collision with another truck also under contract to B-H Transfer.[20] At issue was the enforceability of a release and indemnity provision in the independent contractor agreement between Coleman and B-H Transfer.[21] The Supreme Court reiterated that

> [t]he language of 49 CFR § 376.12 (c) (1) and earlier regulations to the same effect have been interpreted to impose vicarious liability on the motor carrier, regardless of agency relationships, for the negligent operation of vehicles leased and operated under its certificate.[22]

Because, as a lessor,[23] "Coleman clearly was not a member of the public for whose benefit motor carrier regulations are in place,"[24] the Supreme Court determined that application of the release and indemnification provision to Coleman was prohibited neither by federal regulations[25] nor by the public policy of Georgia.[26] The case before us, however, was brought by members of the general public

---

[14] 284 Ga. 624, 625 (2) (669 SE2d 141) (2008).

[15] See *Clarendon*, supra at 108 (1) (a) ("Statutory employment is a theory of vicarious liability created by the [Federal Motor Carrier Safety Regulations]") (citation and punctuation omitted).

[16] 49 CFR § 376.12 (c) (4); *Lease and Interchange of Vehicles (Identification Devices)*, 3 ICC2d 92 (October 10, 1986).

[17] Supra.

[18] Supra.

[19] See *Etkind v. Suarez*, 234 Ga. App. 108, 109 (505 SE2d 831) (1998), citing Ga. Const. 1983, Art. VI, Sec. VI, Par. VI ("this court has no authority to overrule or modify a decision of the Supreme Court of Georgia as 'the decisions of the Supreme Court (of Georgia) shall bind all other courts as precedents' ") (citation and punctuation omitted).

[20] Supra at 624.

[21] Id.

[22] (Citation and punctuation omitted.) Id. at 626 (2).

[23] Id.

[24] Id. at 627 (3).

[25] Id. at 626 (2).

[26] Id. at 628 (3).

YALE LAW LIBRARY

"for whose benefit motor carrier regulations are in place."[27] The doctrine of statutory employment is applicable here, and the trial court did not err in giving the challenged instruction to the jury.

(b) Contrary to PN Express's contention, the instruction discussed above did not conflict with the court's instructions on respondeat superior and logo liability; rather, the charges provided instruction to the jury on more than one theory of recovery. "Georgia law . . . permits a plaintiff to proceed to trial on alternative theories of recovery."[28] Here, the Zegels asserted that there was an oral lease between Surlina as lessor and PN Express as lessee, and that PN Express was liable as the "statutory employer" of Surlina; and, in the alternative, the Zegels claimed that PN Express hired Surlina and that PN Express was liable, under the doctrine of respondeat superior, for Surlina's actions within the course and scope of that employment. Because there is evidence in the record to support both theories, the trial court did not err in giving instructions as to both theories.

When a jury charge is challenged on appeal,

> [w]e will not overturn a trial court's decision to give a particular jury charge if there was *any evidence* presented at trial to support giving the charge. In determining whether some evidence exists to support an instruction, an appellate court is not authorized either to weigh existing evidence or to judge witness credibility as these matters are within the province of the jury.[29]

When Surlina was asked if he "had a leasing arrangement with PN Express," he replied, "Yes." Surlina's testimony on this point was conflicting, but it was for the jury to resolve that conflict.[30] Surlina further testified that Soldat provided him with the PN Express logo and DOT authorization numbers, and that Soldat knew that Surlina's truck carried the logo and the DOT numbers. In its supplemental brief, PN Express points out that there is strong evidence that no lease existed between PN Express and Surlina; however, weighing the evidence is the role of the jury, not of this

---

[27] Id. at 627 (3).

[28] (Footnote omitted.) *Wingate Land & Dev. v. Robert C. Walker, Inc.*, 252 Ga. App. 818, 821 (1) (558 SE2d 13) (2001) (plaintiff could pursue, and jury could be instructed upon, alternate claims of quantum meruit and breach of contract).

[29] (Citation omitted; emphasis in original.) *Collins v. Mitchell*, 282 Ga. App. 860, 861 (1) (640 SE2d 364) (2006).

[30] See id.

Court.[31] Surlina also testified that Soldat, acting for PN Express, hired him as a driver on May 1, 2007. This evidence, however slight, was sufficient to justify the jury instructions on statutory employment and on respondeat superior.[32]

3. At the charge conference, PN Express requested the trial court to give a jury instruction based on 49 CFR § 376.12 (c) (4), which provides:

> Nothing in the provisions required by paragraph (c) (1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 USC 14102 and attendant administrative requirements.

Although the trial court agreed to give such a charge at the charge conference, the court apparently inadvertently omitted to do so. Counsel for PN Express objected to the jury charge on that basis, but the trial court maintained that it had given this charge. PN Express argues that because the trial court instructed the jury on subsection (c) (1) of 49 CFR § 376.12, it erred in failing to instruct on subsection (c) (4).

The trial court's failure to give a jury charge based on subsection (c) (4) of 49 CFR § 376.12 did not constitute reversible error. "It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charges contained error."[33] In its charge to the jury, the trial court gave full and adequate instructions on the creation of a principal-agent relationship; the scope of an agent's authority; proof of agency; the establishment of a master/servant relationship; and the scope of an employer's liability for the acts of his employee. The trial court also instructed the jury that the mere presence of a logo on the side of a truck, without more, is insufficient to establish liability. We conclude that the omission of a charge based on subsection (c) (4) was not

---

[31] See id.

[32] See *Reliance Ins. Co. v. Bridges*, 168 Ga. App. 874, 876 (1) (311 SE2d 193) (1983) ("It is a well established rule that an instruction is not abstract or inapplicable where there is any evidence, however slight, on which to predicate it. To justify a charge on a given subject, it is not necessary there should be direct evidence going to that point; it is enough if there be something from which a legitimate process of reasoning can be carried on in respect to it") (citation and punctuation omitted).

[33] (Citations and punctuation omitted.) *Delson v. Ga. Dept. of Transp.*, 295 Ga. App. 84, 88 (2) (a) (671 SE2d 190) (2008).

reversible error.[34]

4. PN Express contends that the trial court erred in overruling its objection to certain testimony by the Zegels' expert. The following question was posed to the witness:

[L]et's assume that a carrier that has obtained a DOT number allows an owner/operator, who has his own truck . . . to drive under the authority of the carrier's number. . . . And then let's further assume that that owner/operator, while driving under that authority, is involved in a collision somewhere. . . . What do the regulations state with respect to any responsibility on the . . . motor carrier?

In response, the Zegels' expert witness testified that "once a carrier has shared his DOT number, . . . he would be liable for any actions of the employee, be it independent contractor or not. . . . And it clearly states that in the regulations." When the witness was asked if his answer would change if, at the time of the collision, "the owner/operator was not carrying a load that had originated with the carrier," the witness responded that under the federal regulations, "[w]hoever's DOT [number] they're operating under, that's who is responsible." PN Express argues that this testimony was inadmissible, because it was directed to the ultimate issue of liability. We disagree.

The witness here was testifying as to the content of the federal regulations, not as to the ultimate issue in the case. Moreover, testimony of an expert even as to the ultimate issue is admissible "where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves[,] i.e., the conclusion is beyond the ken of the layman."[35] Here, the expert's testimony related to his knowledge of federal trucking regulations unfamiliar to laymen. "The admission of evidence is a matter resting largely within the sound discretion of the trial court, and appellate courts will not interfere absent an abuse of discretion."[36] We find no abuse of discretion here.

5. PN Express asserts that the trial court erred in declining to charge the jury under OCGA § 51-12-33. Subsection (c) of this Code

---

[34] See *Bakery Svcs. v. Thornton Chevrolet*, 224 Ga. App. 31, 35 (6) (a) (479 SE2d 363) (1996) (where charges given correctly stated the law and reflected the principles embodied in appellant's requested charge, trial court's failure to give charge in exact language requested was not error).

[35] (Citation, punctuation and footnote omitted.) *Ga. Dept. of Transp. v. Baldwin*, 292 Ga. App. 816, 819 (3) (665 SE2d 898) (2008).

[36] (Citation and punctuation omitted.) *Robert Stovall Family, L.P. v. Carroll County Water Auth.*, 255 Ga. App. 223, 224 (564 SE2d 763) (2002).

section provides as follows: "In assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." Under subsection (d) (1), "[n]egligence or fault of a nonparty shall be considered . . . if a defending party gives notice . . . that a nonparty was wholly or partially at fault." PN Express gave the notice required under OCGA § 51-12-33 (d) of its intent to ask the jury to assign fault "wholly or partially" to Patterson Freight Company and certain other entities. PN Express contends that "[t]he jury could have easily concluded that Patterson Freight Company directed and controlled Surlina or negligently supervised him." Without citing authority, PN Express argues that the trial court's failure to give an apportionment charge under OCGA § 51-12-33 was reversible error. We disagree.

The parties have directed us to no Georgia authority on point on this issue, and our research has uncovered none. We note that the Zegels' action against PN Express is entirely based on notions of derivative liability: statutory employment and respondeat superior. Generally, where a party's liability is solely vicarious, that party and the actively-negligent tortfeasor are regarded as a single tortfeasor.[37] Thus, where a defendant employer's liability is entirely dependent on principles of vicarious liability, such as respondeat superior, then "[u]nless additional and independent acts of negligence over and above those alleged against the servant or employee are alleged against the employer, a verdict exonerating the employee also exonerates the employer."[38]

Other states have determined that comparative fault statutes do not apply where the defendant's liability is derivative, and we concur. "Since the corporation's liability for the accident was purely vicarious in nature for the acts of [Surlina] himself, rather than joint and several, it is obvious . . . that the comparative fault statute [does] not apply."[39] Thus, the trial court did not err in declining to instruct the jury on OCGA § 51-12-33.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

---

[37] *De Los Santos v. Saddlehill, Inc.*, 511 A2d 721, 727 (I), n. 2 (N.J. Super. Ct. App. Div. 1986) ("Clearly, the [Comparative Negligence] Act does not apply where the liability of one of the defendants is solely vicarious"). See N.J. Stat. Ann. §§ 2A:15-5.1; 2A:53A-1.

[38] (Citations and punctuation omitted.) *H & H Subs, Inc. v. Lim*, 213 Ga. App. 371, 372 (1) (444 SE2d 404) (1994) (jury verdict was void where employee was found liable but actual damages were apportioned only against employer).

[39] (Citations omitted.) *J. R. Brooks & Son v. Quiroz*, 707 So2d 861, 863 (II) (Fla. Third Dist. Ct. App. 1998) (vicariously-liable defendant is entitled to reduce damages awarded against it by amount of settlement between injured party and actual tortfeasor). See Fla. Stat. § 768.81 (2010).

YALE LAW LIBRARY

DECIDED JUNE 2, 2010 —
RECONSIDERATION DENIED JUNE 29, 2010 — 

*Gray, King, Chamberlin & Martineau, William E. Gray II, Dennis, Corry, Porter & Smith, Scott W. McMickle, Kevin P. Branch,* for appellant.

*Flynn, Peeler & Phillips, Paul G. Phillips, Drew, Eckl & Farnham, Stephanie F. Brown, Mary D. Peters, Michael J. Gorby, Jeffrey D. Cooper,* for appellees.