A99A1958. BERNSTEIN v. FLAGSTAR BANK, FSN.
(524 SE2d 241)

ELDRIDGE, Judge.

Defendant-appellant Steven Bernstein, a mortgage broker licensed in Georgia and owner of Georgia Mortgage Assistance (GMA), appeals from the DeKalb County State Court's grant of summary judgment in favor of plaintiff-appellee Flagstar Bank, FSN, formerly known as First Security Savings Bank ("Flagstar"). We affirm.

This case arises out of a verified complaint for breach of contract filed by Flagstar in July 1997. The contract was an August 1993 correspondent agreement between Bernstein and Flagstar, a mortgage underwriter. Under the contract, Bernstein agreed to offer for sale to Flagstar his interest in residential mortgage loans originated by his company. The contract did not allow Bernstein to sell loans originated by third parties. Section 6 of the contract also required Bernstein to be licensed and qualified to transact business as a mortgage broker in Georgia.

Further, section 2 of the contract read as follows:

C. Correspondent [Bernstein] represents, covenants and warrants that any loan it submits to [Flagstar] for approval shall be in compliance with all applicable federal, state, and local statutes, ordinances, and regulations[.] . . . E. Correspondent agrees that upon written request Correspondent shall immediately repurchase from [Flagstar] any closed loan that is not in compliance with the above statutes, ordinances, and regulations . . . or if [Flagstar] discovers that the correspondent or the individual borrower committed fraud in connection with the Mortgage Loan.

In May 1995, pursuant to an investigation by the Federal Bureau of Investigation, Flagstar discovered that several mortgage loans submitted by Bernstein under this contract had been fraudulently obtained. The FBI found that an individual paid Bernstein a fee to use Bernstein's broker's license and fax machine to obtain loans from several mortgage companies. Such loans were based upon applications which contained fictitious borrowers and fraudulent qualifying paperwork.

However, the summaries of these loans identified Bernstein as the correspondent, and the loan documents identified GMA as the originator. Bernstein was the only licensed mortgage broker working for GMA, and the loans were submitted under the authority of this license pursuant to the correspondent agreement. Origination fees were paid directly to Bernstein by closing attorneys. Bernstein then paid the individual, later identified as John Greene, 80 percent of the origination fee, while Bernstein retained 20 percent.

Upon discovering the fraud, Flagstar mailed to Bernstein a letter demanding that Bernstein repurchase the loans for a total of $1,719,372.40, pursuant to Section 2. E. of the contract. When Bernstein refused, Flagstar mitigated its losses by selling the properties at foreclosure. The remaining balance on the loans, plus costs of foreclosure and sale, was $270,569.57. Flagstar filed suit in July 1997 and filed a motion for summary judgment in May 1998. The trial court granted the motion in April 1999, and Bernstein appealed. *Held*:

1. In his first enumeration, Bernstein contends that venue was improper. However, Bernstein failed to raise this defense in his answer to the complaint and, further, admitted that jurisdiction and venue were proper. Therefore, this asserted error is waived. OCGA § 9-11-12 (h) (1) (B); see also Michigan Court Rules § 2.221.[1]

2. In his second enumeration, Bernstein claims that summary judgment was inappropriate because a genuine issue of fact exists as to whether the correspondent agreement applied only to loans originated by Bernstein and not to loans originated by others. This claim is without merit.

In its order granting summary judgment, the trial court found as a matter of law that the contract terms were not ambiguous. See OCGA §§ 13-2-1; 13-2-2; see also *Wickliffe v. Wickliffe*, 227 Ga. App.

---

[1] Although the correspondent agreement provided that Michigan law applied to disputes arising from the contract, Bernstein relies on Georgia law in his brief to this Court. Regardless, the result in this appeal is the same under either Georgia or Michigan law. Further, an agreement to apply foreign law applies only to substantive law and not to procedure; the procedural law of the forum state applies. See *Lloyd v. Prudential Securities*, 211 Ga. App. 247, 248 (1) (438 SE2d 703) (1993).

432, 435 (2) (489 SE2d 153) (1997); *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 604 (576 NW2d 392) (1997). Neither party disputes this finding. In its summary judgment order, the trial court specifically found as an undisputed fact that "[t]he agreement did not provide that [Bernstein] could sell residential mortgage loans originated by third parties." Accordingly, the trial court *agreed* with Bernstein's contention that the agreement applied only to loans "originated" by him. There was no error.

3. However, Bernstein contends that a jury issue exists as to who actually "originated" the loans at issue in this litigation. In support of his contention, Bernstein claims that John Greene performed many of the preliminary functions in preparing the loan application documents, i.e., meeting the buyers, verifying employment and tax returns, ordering credit reports, and obtaining appraisals. Bernstein contends that he should be relieved of liability under the agreement if it is established that Greene, in fact, originated the loans. This argument lacks merit.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation and punctuation omitted.) *McCoy v. West Bldg. Materials*, 232 Ga. App. 620 (502 SE2d 559) (1998). See also *Pitsch v. ESE Mich.*, 233 Mich. App. 578 (593 NW2d 565) (1999); *Marcelle v. Taubman*, 224 Mich. App. 215 (568 NW2d 393) (1997). A case may be decided as a matter of law "where, as here, the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion. [Cit.]" *Feely v. First American Bank*, 206 Ga. App. 53, 55 (1) (424 SE2d 345) (1992). See also *Moll v. Abbott Labs.*, 444 Mich. 1, 28 (506 NW2d 816) (1993).

The correspondent agreement was between Bernstein, in his personal capacity as sole proprietor of GMA, and Flagstar; no other parties were involved. The agreement specifically states that Bernstein agreed to offer for sale its interest in loans "originated by Correspondent," i.e., Bernstein. Further, the repurchase provision of the contract applied only to loan applications "submit[ted]" to Flagstar under its agreement with Bernstein. Simply stated, Bernstein was the *only* person who could submit loan documents to Flagstar under the correspondent agreement, and Bernstein was the *only* person who could be held liable for the repurchase of any loans which were

submitted under the correspondent agreement if the loans either violated the contract provisions or were secured through fraud. Therefore, the fact that Bernstein allowed the loan documents to be submitted to Flagstar under the agreement and obtained the benefit therefrom serves as an admission that Bernstein "originated" such applications, and he is estopped from asserting otherwise. See OCGA § 24-4-24 (b) (8); *Walker v. Sutton,* 222 Ga. App. 638, 639 (1) (476 SE2d 34) (1996); see also *Matter of Estate of Williams,* 164 Mich. App. 601 (417 NW2d 556) (1987).

Further, in his answer to the complaint and through his deposition testimony, Bernstein admitted the following: (a) Greene was not a licensed mortgage broker; (b) Bernstein was aware that Greene could not obtain a broker's license because of his history of writing bad checks; (c) Bernstein supervised the preparation of the loan documents and confirmed some of the data on the loans prior to submission to Flagstar; (d) Bernstein's broker's license provided the authority for submission of the loan documents to Flagstar; (e) the loan documents were submitted pursuant to the correspondent agreement; (f) the loan documents did not contain the name of any originator or broker other than Bernstein or GMA; (g) Bernstein received the origination fee directly from the closing attorneys under the contract; (h) Bernstein retained 20 percent of the origination fee and gave Greene 80 percent; (i) the loan documents contained fraudulent material; and (j) the borrowers on these loans were involved to some extent in the fraud. See also OCGA §§ 7-1-1000 (7), (11); 7-1-1002 (a) (requiring mortgage brokers to be licensed by the state).

As such, there was no evidence to support Bernstein's contention that he should be relieved from liability under the contract because Greene allegedly "originated" the loan applications. Summary judgment was appropriate.

4. In his final enumeration, Bernstein cites as error the trial court's decision to strike the affidavit of Douglas Davis, an attorney who specializes in real estate law and residential mortgage loans. In his affidavit, Davis defined the term "origination" and offered his conclusions regarding the proper construction of the correspondent agreement.

The trial court granted Flagstar's motion to strike the affidavit, ruling that it was filled with "inadmissible, irrelevant and conclusory statements. The terms of the correspondent agreement are not ambiguous[,] and matters outside a contract may not be used to vary or explain unambiguous terms of an agreement." Such ruling was consistent with both Georgia and Michigan law. See OCGA §§ 13-2-1; 13-2-2 (a); *Zurich Ins. Co. v. CCR & Co.,* supra. Accordingly, there was no error.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 27, 1999.

*Baum & McGahren, David E. Baum,* for appellant.

*Holland & Knight, Susan W. Housen, Scott L. Bonder,* for appellee.

