A11A0728. CROSSING PARK PROPERTIES, LLC et al.
v. ARCHER CAPITAL FUND, L.P. et al.

(715 SE2d 444)

SMITH, Presiding Judge.

Crossing Park Properties, LLC, Glen H. Hammer and Joan F. Hammer appeal from the trial court's grant of summary judgment in favor of Archer Capital Fund, L.P. ("Archer") and two affiliated entities. Because disputed issues of material fact remain to be decided with respect to the dealings between the Hammers and Archer, we reverse.

The underlying dispute arose from a 2006 real estate transaction. 2000 Ocean Drive LLC purchased a hotel property in Florida. Financing was arranged from several sources. Those sources were an initial financing from Bank of America and secondary financing through two lenders: JDI, the senior lender, which held the first mortgage on the property, and Archer, the junior lender, which held the second mortgage. The Archer loan was entered into by 2000 Ocean Drive LLC, Crossing Park, Mrs. Hammer, and TKW Partners, LLC. As part of the arrangements with Archer, which were negotiated between Archer's representative and Mr. Hammer, Crossing Park and the Hammers offered security in the form of real property, and Mr. Hammer signed a personal guaranty.

During the course of negotiations, Mr. Hammer and Archer's

---

representative mutually agreed that they would "be totally open and honest" with one another and would deal "in a very honest and straightforward manner." Mr. Hammer specifically requested, and Archer's representative agreed, that "all the documents that pertain to [him] . . . would be forwarded to Atlanta in advance to give us a chance to review the documents." Archer's representative agreed that it was his "intention that no document was concealed." But the documents given to Mr. Hammer did not include a subordination agreement between 2000 Ocean Drive LLC, Archer, and JDI that included several provisions specifically affecting Mr. Hammer and his obligations in the transaction. Provision 14 (a) of the subordination agreement provided that Archer would not, without JDI's consent,

> commence, prosecute or participate in any administrative, legal or equitable action against Owner, any Guarantor (as defined in the Loan Agreement) *other than Glen Hammer* (*"Hammer"*) or the Property or take any other action that might adversely affect any Guarantor (*other than Hammer*), Owner or Owner's interest in the Property or the interests of the Owner's members in the membership interests in Owner or that might adversely affect JDI and its interest in the Property.

(Emphasis supplied.) Provision 19 provided that if JDI obtained the property from 2000 Ocean Drive LLC by deed in lieu of foreclosure, Archer would release its lien on the property.

Mr. Hammer testified that when Archer's representative "sent me the papers that pertained — that he said pertained to Joan, my wife, me, and my family, there was never any word of this and it was never provided." The document was not at the closing and was never sent to him, and he was not aware of its contents. He would not have proceeded with closing if he had known of the two paragraphs in question:

> First of all, I was a credit enhancement on the transaction. I was not the owner. I didn't stand to make a large amount of profits that the developers and owners stood to make. And if I knew there was an arrow painted on my back as the sole responsible party, that was not the deal . . . . That changed the entire dynamic in which we would not have proceeded.

After the transaction ended in default in 2007, Crossing Park and the Hammers brought this action against Archer and seven other defendants. They initially brought claims against Archer

seeking damages for fraud and discharge and release from their obligations as surety and accommodation parties. Crossing Park and the Hammers initially obtained an interlocutory injunction, but it was eventually dissolved, and the appeal of that order was dismissed as moot after the foreclosure sale took place in 2009.

Thereafter, Archer moved for partial summary judgment on the counts of the original complaint alleging civil fraud (Count I), release of surety (Count VII), and discharge of surety (Count VIII). Five months later, Crossing Park and the Hammers amended their complaint to add two affiliates of Archer as defendants and allege additional claims against Archer and its affiliates.[1]

In a very detailed 21-page order, drafted by counsel for Archer, the trial court granted Archer's motion and then went on to conclude that all claims against Archer and its affiliates were foreclosed by its ruling on the claims identified in Archer's motion. It therefore granted summary judgment "on each and every count of Plaintiffs' Amended Complaint alleged against Archer and the Archer Affiliates; namely, Counts I through V and Counts VIII through XI."[2]

Crossing Park and the Hammers appeal, arguing in a single enumeration of error that the trial court erred in granting summary judgment on any count because disputed issues of fact remain as to Archer's failure to disclose the agreements between Archer and other parties to the transaction, which Crossing Park and the Hammers contend exposed them to unanticipated liability and impaired the available security for the loans.

1. We first address the appropriate standard of review. Archer contends that because witnesses testified at the hearing on its earlier motion to dissolve the preliminary injunction, that hearing was "tantamount to trial" and the trial court's finding that no disputed issues of fact existed therefore must be "accorded substantial deference." This novel argument is without merit. Archer's summary judgment motion was not yet filed at the time of the preliminary injunction hearing,[3] and in any event the standards for the resolu-

---

[1] The amended complaint asserted claims against Archer and its affiliates for fraud, constructive fraud, conspiracy, malicious procurement, breach of implied duty of good faith and fair dealing, release of surety, discharge of accommodation makers, and wrongful foreclosure.

[2] "Nothing in the applicable law places a burden on the nonmovant to respond to issues which are not raised in the motion for summary judgment. But a trial court may grant summary judgment sua sponte under certain circumstances, so long as it ensures that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment." (Citation and punctuation omitted.) *Stephens v. Alan V. Mock Constr. Co.*, 302 Ga. App. 280, 288 (3) (690 SE2d 225) (2010). Crossing Park and the Hammers do not assert that they did not receive fair notice and an opportunity to respond.

[3] The hearing on that motion was held exactly one year before the trial court entered its order granting summary judgment.

tion and review of injunctions are irrelevant to those applied to summary judgments. OCGA § 9-5-8; *Satilla Health Svcs. v. Bell*, 280 Ga. App. 123, 127 (633 SE2d 575) (2006) (standard for interlocutory injunctions).

Nor are the cases cited by Archer relevant to the standard of review on summary judgment. Both *Harris v. Williams*, 304 Ga. App. 390 (696 SE2d 131) (2010), and *Saravia v. Mendoza*, 303 Ga. App. 758 (695 SE2d 47) (2010), are appeals of child custody orders. Such matters may be heard, as they were in those cases, with the trial court sitting as the finder of fact and conducting what amounts to a bench trial.[4] See OCGA § 19-6-17 (c) ("The petition . . . shall be heard by the court, unless a jury trial is demanded by either party to the case.").

The appropriate standard of review on summary judgment, on the other hand, is completely clear:

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. [Cit.]

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). See also OCGA § 9-11-56 (c).

In addition, we note that the transaction documents provide that they are to be governed by "the laws of the State of New York," and appellants filed formal notice of their intent to rely upon New York law. "Under the rule of lex fori, procedural or remedial questions are governed by the law of the forum, the state in which the action is brought." (Citation and punctuation omitted.) *Bunker Hill Intl. v. Nationsbuilder Ins. Svcs.*, 309 Ga. App. 503, 506 (710 SE2d 662) (2011). See also *Bernstein v. Flagstar Bank*, 240 Ga. App. 535, 536 (1), n. 1 (524 SE2d 241) (1999) ("agreement to apply foreign law applies only to substantive law and not to procedure").

2. Viewing the evidence in this case under the proper standard, and applying the relevant New York law, Crossing Park and the Hammers have identified disputed issues of material fact that render summary judgment inappropriate on all their claims.

---

[4] Appellee quotes from *Harris*: "While we apply a de novo standard of review to any questions of law decided by the trial court, factual findings made after a [hearing] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." See *Harris*, supra, 304 Ga. App. at 390. But the original decision quoted by *Harris* uses the words "bench trial" rather than "hearing." *Lifestyle Home Rentals v. Rahman*, 290 Ga. App. 585 (660 SE2d 409) (2008).

An expert on behalf of Crossing Park and the Hammers testified at length to the effect of the provisions in the subordination agreement on Crossing Park and the Hammers.[5] He gave as his opinion that the undisclosed subordination agreement, while it contained subordination provisions, also contained "many other material provisions," some of which "dramatically and detrimentally affected" Crossing Park and the Hammers, "had a material and adverse" effect on them, and "materially increased the risk" to them. These other material provisions "are not found in subordination agreements typically utilized in transaction[s] such as this."

This expert witness explained that provision 14 (a) barred legal action against the owner, as well as any guarantor except Mr. Hammer. In addition, it did not bar action against Crossing Park and Mrs. Hammer, who were not owners or guarantors but "accommodation parties." Provision 14 (a) thus "singled out" the Hammers and Crossing Park for legal action. He further explained that provision 19 materially impaired the value of the collateral, and that guarantors and accommodation parties should be discharged from their obligations "on a dollar-for-dollar-basis for each dollar value of impairment of the collateral."

The expert also testified that, in his opinion, Archer's failure to disclose the other material provisions was not consistent with its duty of good faith and fair dealing under New York law. In his opinion, good faith and fair dealing required that such unusual provisions be disclosed and presented for review and signature to any party that they materially and adversely affected, in this case Crossing Park and the Hammers.

In *Chemical Bank v. Layne*, 423 FSupp. 869 (S.D. N.Y. 1976), the federal district court summarized New York law regarding sureties:

> A contract of guaranty is one in which the guarantor is entitled to a full disclosure of every point which would be likely to bear upon his disposition to enter into it. The law imposes upon a creditor the duty of dealing with his surety with the utmost good faith at every step in the transaction. Honesty and fair dealing required the [lender] to speak out, and correct the false impression which was entertained by

---

[5] "Expert opinion testimony is allowed where the nature of the question is such that the factors leading to a conclusion are not known to the common or average person, but are among those things shrouded in the mystery of professional skill or knowledge." (Citation and punctuation omitted.) *Bailey v. Annistown Road Baptist Church*, 301 Ga. App. 677, 689-690 (12) (689 SE2d 62) (2009) (full concurrence in Division 12). Such testimony may be permitted even with respect to the ultimate issue in the case. *PN Express v. Zegel*, 304 Ga. App. 672, 679 (4) (697 SE2d 226) (2010).

> [the surety], and for which the [lender] was largely, if not wholly, responsible. While in many instances mere silence cannot be made the basis of fraud, yet, where the circumstances are of such a nature as to impose a duty upon one to speak, and where he deliberately fails to do so, his neglect will be deemed a deliberate suppression of the truth, and will amount to constructive, if not actual, fraud. A concealment of facts which, if known to the surety, would have deterred him from entering into the contract of suretyship, or which increased the risk of his undertaking, constitutes fraud, and will prevent an enforcement of his obligation.

(Citations and punctuation omitted.) Id. at 871 (I). At the same time,

> [t]he obligee is not under an obligation to disclose to a surety information of which the surety has knowledge readily to hand. A surety cannot "rest supinely, close his eyes, and fail to seek important information" and then seek to avoid liability under the guaranty by claiming he was not supplied with such information.

(Citations and punctuation omitted.) Id. at 871-872. Here, the guaranties contained no language alerting Mr. Hammer to the possibility that other guarantors had been released or that the available collateral had already been impaired. Id. at 878 (IV).

Archer asserts that *Chemical Bank* supports the grant of summary judgment here because the court ultimately determined that the guarantor prevailed on only some of his claims. But the district court's opinion in *Chemical Bank* was issued after "[t]he case was tried to the court without a jury." Id. at 870. An ultimate decision in that case was, presumably, not appropriate for summary disposition.

Archer contends that Crossing Park and the Hammers were aware of the existence of the subordination agreement generally, and that it had no duty to disclose the contents of a document of which Mr. Hammer was aware and which he should have exercised due diligence to investigate on his own initiative. It further contends that Archer's junior position to JDI was fully disclosed.

As the expert witness testified, however, the issue was not the existence of the subordination agreement itself. Rather, the agreement contained unusual provisions "not found in subordination agreements typically," that affected Crossing Park and the Hammers directly and excluded them from an agreement benefitting all the other guarantors. These unusual provisions, according to the expert, should have been disclosed to Crossing Park and the Hammers as part of Archer's obligation of good faith and fair dealing and its promise to provide all

documents that pertained to the Hammers. And although Archer argues that "one who signs a document is presumed to have read it," Crossing Park and the Hammers were not signatories to the agreement containing the other material provisions.

Archer further argues that the failure to disclose was immaterial, for various reasons. But Mr. Hammer testified that he would not have entered into the agreement at all had he known of the undisclosed provisions, because in his view they unacceptably increased his and his family's risk in light of the benefits accruing to him from the agreement. Whether that testimony is credible is not an issue that the trial court can determine on summary judgment. *Peach Blossom Dev. Co. v. Lowe Elec. Supply*, 300 Ga. App. 268, 271 (684 SE2d 398) (2009) (trial court cannot discount affidavit because it is self-serving).

While Archer also contends that release language in a forbearance agreement, allegedly executed after default, binds Crossing Park and the Hammers, evidence was presented that the parties never reached an agreement. Mr. Hammer testified that Archer sent him a typed draft of the agreement to which he made handwritten changes but that Archer returned to him a copy with "No" written on it and told him that it was rejecting his offer. Under these circumstances no meeting of the minds between the parties was shown. *Yenom Corp. v. 155 Wooster St., Inc.*, 23 AD3d 259, 260 (805 NYS2d 304) (2005).

In summary, the issue of good faith and fair dealing "is not an issue which is readily determinable on a motion for summary judgment." (Citations and punctuation omitted.) *Credit Suisse First Boston v. Utrecht-America Finance Co.*, 80 AD3d 485, 487 (915 NYS2d 531) (2011). In *Credit Suisse*, an expert on behalf of one party testified that the other party did not act in accordance with customary practices in the business, and the Appellate Division held that this created "a triable issue of fact," and that "while the availability of a more prudent course of conduct does not preclude a party from demonstrating its good faith, it presents a factual issue for resolution at trial. At such time, the weight to be afforded to the expert opinion is within the province of the trier of fact." (Citations omitted.) Id.

> On summary judgment, a trial court is not authorized to resolve disputed issues of material fact. A trial court is authorized only to determine whether disputed issues of material fact remain. If, and only if, no disputed issue of material fact remains is the trial court authorized to grant summary judgment.

(Citation and punctuation omitted.) *Ly v. Jimmy Carter Commons,*

286 Ga. 831, 833 (1) (691 SE2d 852) (2010). Crossing Park and the Hammers have demonstrated that disputed issues of material fact exist as to whether Archer breached its duty of good faith and fair dealing and whether that breach was material. As the trial court noted in its order, these issues apply with equal force to all the claims asserted against Archer and its affiliates. The trial court therefore erred in granting summary judgment to Archer and its affiliates on any of the grounds asserted in the amended complaint.

*Judgment reversed. Mikell and Dillard, JJ., concur.*

DECIDED JULY 11, 2011 —
RECONSIDERATION DENIED JULY 27, 2011 — 

*Smith, Gambrell & Russell, Edward H. Wasmuth, Jr., William W. Maycock, Stephen M. Forte*, for appellants.
*Paul N. Monnin, Mark E. Grantham*, for appellees.