**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 11, 2015**

# In the Court of Appeals of Georgia

A14A2307. MORNAY et al. v. NATIONAL UNION FIRE
        INSURANCE CO. OF PITTSBURGH, P.A.

MILLER, Judge.

Kenneth Mornay, Sr., individually and as the administrator of the Estate of Sylvia Mornay, Sharon Marie Mornay Bright, and Karen Ann Thomas (collectively "the Plaintiffs") filed suit against Southeastrans, Inc. and its liability insurer, National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union"), for claims arising out of Sylvia Mornay's death. The Plaintiffs named National Union as a party pursuant to OCGA § 40-1-112, which allows plaintiffs to file a direct action against the insurers of motor carriers. National Union moved for summary judgment on the ground that the relevant vehicle fell within an exemption to the motor carrier definition under OCGA § 40-1-100 (12) (B) (vii). The trial court granted National

Union's motion. The Plaintiffs appeal, contending that the trial court erred in concluding that the subject vehicle was exempt from the definition of a motor carrier. For the reasons that follow, we affirm.

> To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law. We review de novo a trial court's [grant or] denial of summary judgment, construing the evidence in a light most favorable to the nonmoving party.

(Footnotes omitted.) *Occidental Fire & Cas. Co. of North Carolina v. Johnson*, 302 Ga. App. 677 (691 SE2d 589) (2010).

So viewed, the evidence shows that the Department of Community Health ("DCH") contracted with Southeastrans to act as a broker of non-emergency medical transportation to Medicaid members in Georgia. In turn, Southeastrans contracted with Samuel Maddy d/b/a Drop-4-Care Transportation to provide transportation services pursuant to Southeastrans's DCH contract.

On April 19, 2010, Southeastrans dispatched a Drop-4-Care van to transport Sylvia Mornay from her nursing home to a medical appointment. During transport, the Drop-4-Care van, a 2002 Ford Ecoline E-350, stopped abruptly, causing Mornay to flip over in her wheel chair, resulting in injuries that ultimately led to her death. At

the time of the accident, National Union provided automobile liability insurance to Southeastrans.

The Plaintiffs sued Southeastrans and its insurers, including National Union. The trial court granted summary judgment to National Union, finding that the Plaintiffs could not bring a direct action against National Union under OCGA § 40-1-112 because the Drop-4-Care van fell within an exemption to the motor carrier definition under OCGA § 40-1-100 (12) (B) (vii).[1]

On appeal, the Plaintiffs contend that the trial court erred in concluding that the Drop-4-Care van fell within the motor carrier exemption under OCGA § 40-1-100 (12) (B) (vii). We disagree.

Under the Georgia Motor Carrier Act, "[i]t shall be permissible under this part for any person having a cause of action arising under this part to join in the same action the motor carrier and the insurance carrier, whether arising in tort or contract." OCGA § 40-1-112 (c).[2]

---

[1] Southeastrans and its other insurer are not parties to the appeal.

[2] The direct action statute in effect at the time of the accident was codified at former OCGA § 46-7-12. See Ga. L. 2012, p. 580, § 16. Although we generally apply the statute in effect at the time of the incident and will not apply an amended statute retroactively unless the statute's language imperatively requires it, see *Belcher v. Bremer*, 253 Ga. App. 745, 746 (1) (560 SE2d 324) (2002), we refer to the direct

> The purpose of permitting joinder of the insurance company in a claim against a common carrier is to further the policy of the Motor Carrier Act, that is, to protect the public against injuries caused by the motor carrier's negligence. . . . The intent of this [S]tate's motor carrier laws is that the insurer is to stand in the shoes of the motor carrier and be liable in any instance of negligence where the motor carrier is liable.

(Punctuation and footnotes omitted.) *Johnson*, supra, 302 Ga. App. at 677-678. The direct action statute is in derogation of common law, and its terms require strict compliance. See *Werner Enterprises, Inc. v. Stanton*, 302 Ga. App. 25, 26 (690 SE2d 623) (2010).

A direct action cannot be maintained against a motor carrier's insurance company where the vehicle involved in the incident is exempted from the definition of a "motor carrier." See *Smith v. Southern Gen. Ins. Co.*, 222 Ga. App. 582, 583 (3) (474 SE2d 745) (1996).

> The burden of proof as to whether [an] exemption is applicable lies with the party claiming it, and there is no burden on the opposing party to prove that the motor vehicle is not within the exemption. Although at summary judgment a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case, here [National Union] has the burden of proof with respect to the exemption and cannot merely rely upon the absence of evidence in the record disproving that the exemption applies.

action statute now in effect, which contains identical pertinent language, for purposes of clarity since the parties and the trial court cite the current statute.

4

(Punctuation and footnote omitted.) *Johnson*, supra, 302 Ga. App. at 678-679.

The term "motor carrier" shall not include privately owned and operated vehicles "capable of transporting not more than ten persons for hire when such vehicles are used exclusively to transport persons who are elderly, disabled, en route to receive medical care or prescription medication, or returning after receiving medical care or prescription medication." OCGA § 40-1-100 (12) (B) (vii).

In this case, the Drop-4-Care van in question was originally designed to seat at least 12 passengers. However, the van was retrofitted to transport a wheelchair and, as a result of the modifications, was only capable of transporting one passenger in a wheelchair and three ambulatory passengers. Additionally, although Drop-4-Care advertised transportation to and from non-medical events, such as weddings, errands, and other outings, Drop-4-Care exclusively provided transportation for non-emergency medical treatment through its contract with Southeastrans. Notwithstanding this evidence, the Plaintiffs argue that National Union did not meet the requirements of OCGA § 40-1-100 (12) (B) (vii).

1. The Plaintiffs first contend that the statutory exemption did not apply because the van was not used exclusively for medical transport, based on the testimony from Drop-4-Care's corporate representative that the van could be used for

non-medical transport. Regardless of whether Drop-4-Care offered other services, however, the Plaintiffs provided no evidence refuting the testimony that Drop-4-Care *used* the van in question *only* for medical transport. Accordingly, this argument is without merit.

2. The Plaintiffs next contend that the van did not meet the statutory exemption because it transported people who were not elderly and disabled, citing evidence that Drop-4-Care was contractually obligated to be able to transport children. This argument also lacks merit.

The pertinent statutory language exempts from the definition of a motor carrier any vehicle "used exclusively to transport persons who are elderly, disabled, en route to receive medical care or prescription medication, *or* returning after receiving medical care or prescription medication." (Emphasis supplied.) OCGA § 40-1-100 (12) (B) (vii). This language is phrased in the disjunctive. "[W]here a legislative provision is phrased in the disjunctive, it must be so construed absent a clear indication that a disjunctive construction is contrary to the legislative intent." (Citation omitted.) *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996). Applying this rule of construction, the use of the disjunctive in OCGA § 40-1-100 (12) (B) (vii) indicates that a vehicle is exempted from classification as a motor

6

carrier if the vehicle transports persons who are elderly, disabled, or en route to or from medical treatment. Therefore, contrary to the Plaintiffs' argument, the fact that the van may have transported children to and from medical appointments did not preclude it from meeting the statutory exemption. Since the undisputed evidence showed that the van was used exclusively for non-emergency medical transport, the van met the usage criteria.

3. The Plaintiffs next argue that the van did not meet the statutory exemption under OCGA § 40-1-100 (12) (B) (vii) because it was capable of transporting more than ten people based on its design. We disagree.

"The fundamental rules of statutory construction require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 362 (1) (729 SE2d 378) (2012). Additionally, courts may look to other provisions of the same statute to determine the meaning of a particular statutory provision. See *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014) ("[C]ontext is a primary determinant of meaning.") (citation and punctuation omitted).

The term "capable" is not defined in the statute, and we therefore look to its plain and ordinary meaning as defined by dictionaries. See *Archer Western Contractors, Ltd. v. Estate of Pitts*, 292 Ga. 219, 224 (2) (735 SE2d 772) (2012). In ordinary usage, the term "capable" is generally understood to mean having the present ability necessary to complete a required task. See American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=capable ("capable" means, inter alia, "[h]aving the ability required for a specific task or accomplishment; . . . "[p]ermitting an action to be performed"); Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/capable ("capable" means "having attributes (as physical or mental power) required for performance or accomplishment").

Looking at other provisions of the Georgia Motor Carrier Act, it is clear that the legislature did not intend for the term "capable" as used in OCGA § 40-1-100 (12) (B) (vii) to refer to a vehicle's design. Notably, other parts of the Georgia Motor Carrier Act categorize vehicles based on their designed, rather than actual, seating capacity. See OCGA § 40-1-100 (5) (defining "corporate sponsored vanpool" as those vehicles that, among other requirements, are "designed to carry not more than 15 passengers including the driver"); OCGA § 40-1-151 (4) (defining "limousine" as any

8

motor vehicle that "meets the manufacturer's specifications for a luxury limousine with a designed seating capacity for no more than ten passengers. . . ."). Reading the Motor Carrier Act in whole, it is clear that the definition of the term "capable" under OCGA § 40-1-100 (12) (B) (vii) is based on the vehicle's actual seating capacity, not its initially designed capacity.

Applying the ordinary meaning of the term "capable" to the circumstances in this case, the undisputed evidence showed that the van could only transport one wheelchair and three ambulatory passengers. Therefore, notwithstanding its initial design, the van at issue in this case was not capable of transporting more than ten passengers.

Since the undisputed evidence showed that the van in question was used exclusively to transport individuals to receive medical care, and was not capable of transporting more than ten persons, the van was not a motor carrier pursuant to OCGA § 40-1-100 (12) (B) (vii). Accordingly, the trial court properly determined that National Union could not be sued directly under OCGA § 40-1-112 (c).

*Judgment affirmed. Doyle, P. J., and Dillard, concur.*