**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 23, 2016**

# In the Court of Appeals of Georgia

A16A0057. GRANGE INDEMNITY INSURANCE COMPANY v. BURNS.

RAY, Judge.

Angela Burns sued J. B. Trucking, Inc. and Grange Indemnity Insurance Company ("Grange"), among others, for injuries she sustained when J. B. Trucking's employee, Chadwick Franks, crashed the box truck he was driving into her vehicle. After a trial, the jury found in favor of Burns and the trial court entered a final judgment in her favor. Grange appeals from that judgment and from the trial court's summary judgment determination, prior to trial, that the MCS-90 endorsement to Grange's insurance policy provided coverage to the accident. Grange argues that the MCS-90 endorsement should not provide coverage for an accident that occurred while Franks was engaged in a purely intrastate trip involving nonhazardous

commodities at the time of the accident. Grange also contends that the trial court erred in reforming the MCS-90 endorsement to increase the liability limit. For the following reasons, we reverse.

This Court reviews "the denial or grant of a summary judgment de novo to determine . . . whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *American Strategic Ins. Corp. v. Helm*, 327 Ga. App. 482, 483 (759 SE2d 563) (2014).

On the day of the accident, Franks was driving a box truck in the course of his employment with J. B. Trucking when he collided with a vehicle driven by Burns. It is undisputed that Franks was engaged in a trip involving purely intrastate commerce and that he was transporting nonhazardous commodities. Franks picked up a box truck in Monroe, Georgia, and drove the truck to Norcross, Georgia, where he picked up a load of "sales papers" and delivered them to a paper company in Newnan, Georgia. The sales papers were manufactured in Georgia and were destined for end users located in Georgia. While he was on his way from Newnan to Monroe to return the empty box truck, Franks struck the vehicle Burns was driving.

On the day of the accident, J. B. Trucking was insured under a commercial auto insurance policy issued by Grange (the "Grange policy"). The Grange policy has a

liability limit of $350,000 per accident. The Grange policy also contains a MCS-90 endorsement, in accordance with the Federal Motor Carrier Safety Regulations ("FMCSR"), 49 CFR §387.15. "An MCS-90 endorsement to an automotive insurance policy obligates an insurer to cover an insured's negligence involving 'vehicles subject to the financial responsibility requirements of . . . the Motor Carrier Act.' The Motor Carrier Act, in turn, creates minimum levels of financial responsibility 'for the transportation of property by motor carrier within the United States.'" (Punctuation omitted.) *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 245 (5th Cir. 2010). The purpose of a MCS-90 endorsement is

> to assure compliance with federal minimum levels of financial responsibility for motor carriers. . . . The MCS-90 endorsement must be attached to any liability policy issued to for-hire motor carriers operating motor vehicles transporting property in interstate commerce. . . . The endorsement creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have otherwise excluded coverage.

(Citations and punctuation omitted.) *Coleman*, supra at 247 (I).

The MCS-90 endorsement attached to the Grange Policy pertinently provides as follows:

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, *any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980* regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect

4

as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(Emphasis supplied.)

The MCS-90 endorsement specifically states that the Grange policy is "primary and the company shall not be liable for amounts in excess of $350,000 per accident." The MCS-90 endorsement has an attached "Schedule of Limits" that notes that a "For-hire (In interstate or foreign commerce)" vehicle carrying "nonhazardous" property carries minimum coverage of $750,000. It also provides that a "For-hire and Private (in interstate, foreign, or intrastate commerce)" vehicle carrying "hazardous materials" carries a minimum insurance of $5,000,000. The Schedule of Limits does not assign coverage for an intrastate carrier that is not carrying hazardous materials.

On motion for summary judgment prior to trial, Grange sought to confirm that its obligation for this accident was the policy limit of $350,000. The trial court ruled that, although it was undisputed that J. B. Trucking was engaged in intrastate commerce involving nonhazardous commodities at the time of the accident, the MCS-

5

90 applied because J. B. Trucking was registered as an interstate carrier. The trial court also concluded that the MCS-90 should be reformed to change its liability limits to $750,000. The case then proceeded to a jury trial, where the jury issued a verdict in favor of Burns and awarded almost $3.3 million in compensatory damages, punitive damages, and litigation expenses. The trial court reduced the award to $2,035,000 to conform with the statutory punitive damages cap and entered a final judgment. Grange appeals from the final judgment and the order denying its motion for summary judgment.

1. Grange argues that the trial court erred in concluding that the MCS-90 endorsement applied to the instant accident when it is undisputed that the accident occurred while Franks was engaged in intrastate commerce and was transporting nonhazardous materials. Burns argues that this Court should conclude that the MCS-90 endorsement applied to all of J. B. Trucking's trips because it was registered as an interstate motor carrier[1] and had, on other occasions, been involved in interstate

[1] We note that Grange disputes whether J. B. Trucking had properly registered as an interstate motor carrier; although the MCS-90 endorsement was attached to the policy, it was not filed with the Federal Motor Carrier Safety Administration, and there was evidence that J. B. Trucking had improperly operated as an interstate motor carrier. However, as explained infra, the issue of whether J. B. Trucking was properly registered as an interstate carrier is rendered moot because it was undisputed that J. B. Trucking was engaged in purely intrastate commerce at the time of the accident.

commerce. Although there is no binding precedent regarding this issue from Georgia courts,[2] it is an issue that has been litigated and decided in federal courts. As explained below, we follow the approach adopted by the majority of federal courts and hold that the determination of whether the MCS-90 endorsement provides coverage hinges upon an analysis of the trip route and the goods being transported at the time of the subject accident. See, e. g., *Coleman*, supra at 251 (III) (B) (providing a summary of state and federal decisions adopting this "trip specific" approach).

(b) *Federal Law.* At the outset, we note that "[t]he operation and effect of a federally mandated endorsement is a matter of federal law." (Citations omitted.) *Lincoln Gen. Ins. Co. v. De La Luz Garcia,* 501 F3d 436, 439 (II) (5th Cir. 2007). By its plain language, the MCS-90 endorsement amends the Grange policy only to the

---

[2] In an unpublished and, therefore, non-binding, decision, *Kolencik v. Progressive Preferred Ins. Co.*, 2006 WL 738715 (II) (C) (N. D. Ga. 2006), the United States District Court held that MCS-90 endorsement coverage did not apply to the subject accident because the defendant trucking company did not have federal authority to operate as an interstate carrier and because at the time of the accident it was engaged in purely intrastate commerce. Both parties filed supplemental briefs addressing *Natl. Specialty Ins. Co. v. Martin-Vegue*, 2016 WL 737780 (11th Cir. 2016), a recent case by the Eleventh Circuit. However, in *Martin-Vegue*, the Eleventh Circuit does not address the specific issue at hand in this case. Rather, it involves the issue of whether a MCS-90 endorsement is applicable where the motor carrier covered by the MCS-90 endorsement was not the motor carrier involved in the wreck.

7

extent necessary to assure that insurers of for-hire motor carriers comply with the

Motor Carrier Act of 1980 and the rules of the Federal Highway Association and the

Interstate Commerce Commission. The MCS-90 endorsement also obligates Grange

to pay for any judgments "recovered against the insured for public liability resulting

from negligence in the operation, maintenance or use of motor vehicles subject to the

financial responsibility requirements of Section 29 and 30 of the Motor Carrier Act.

. ." Accordingly, to understand the scope of the MCS-90 endorsement, we must

determine whether J. B. Trucking's vehicle was subject to its financial-responsibility

requirements set forth in Section 30 of the Motor Carrier Act of 1980.[3] See *Coleman*,

supra at 248 (III) (A).

> Section 30 of the Motor Carrier Act of 1980 provides, in pertinent part, that

> [t]he Secretary of Transportation shall prescribe regulations to require
> minimum levels of financial responsibility sufficient to satisfy liability
> amounts established by the Secretary covering public liability, property
> damage, and environmental restoration for the transportation of property
> by motor carrier or motor private carrier (as such terms are defined in
> section 13102 of this title) in the United States *between a place in a*
> *State and – (A) a place in another State; (B) another place in the same*

---

[3] Section 30 of the Motor Carrier Act of 1980 is codified at 49 USC §31139 (b). See Motor Carrier Act of 1980, Pub. L. No. 92-296, §30, 94 Stat. 793. Section 29 – also referenced in the MCS-90 endorsement – is not relevant in this case.

*State through a place outside of that State; or (C) a place outside the United States.*

(Emphasis supplied.) 49 UCS § 31139 (b). It also provides that "the Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts established by the Secretary covering public liability . . . for the transportation by motor vehicle in *interstate or intrastate commerce*" of certain specified hazardous materials. (Emphasis supplied.) 49 USC §31139 (d) (1) (A)-(C).

The plain language of the MCS-90 and § 30 of the Motor Carrier Act leads us to "conclude[] that the endorsement covers vehicles only when they are presently engaged in the transportation of *interstate* commerce" or the transportation of hazardous materials. (Emphasis supplied.) *Coleman*, supra at 249 (III) (A). The MCS-90 specifies that it applies to vehicles subject to § 30 of the Motor Carrier Act. Applying the rules of statutory construction to § 30 of the Motor Carrier Act, we find that Congress specifically chose to limit the reach of the federal financial responsibility regime to the transportation of property in interstate commerce or the transportation of hazardous commodities. Under the statutory interpretation doctrine of "expressio unius est exclusio alterius, where Congress includes particular language

9

in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (Citation and punctuation omitted.) *United States. v. Ayache*, 997 FSupp2d 856, 862 (I) (3) (M. D. Tenn, 2014). Because § 30 of the Motor Carrier Act explicitly extends the federal financial responsibility requirements to intrastate commerce *only* when certain hazardous materials are being transported, the logical interpretation is that those same requirements do not extend to purely intrastate commerce of nonhazardous materials.

The Federal Motor Carrier Safety Regulations ("FMCSR") also support our finding that the MCS-90 endorsement does not apply when an insured is engaged in intrastate transport of nonhazardous materials. Pursuant to the authority vested it in by the Motor Carrier Act of 1980, the Secretary of Transportation created the financial responsibility regulations set forth in 49 CFR § 387.1, *et seq.* These regulations note that their application is limited to "(a) for-hire motor carriers operating motor vehicles transporting property in *interstate or foreign commerce*" and "motor carriers operating motor vehicles transporting hazardous materials . . . in *interstate, foreign or intrastate commerce*." (Emphasis supplied.) 49 CFR §387.3 (a) - (b).

As the trial court notes, there is a split of authority in the federal courts regarding whether a MCS-90 endorsement applies to an accident caused by an interstate carrier during an intrastate trip carrying nonhazardous materials. However, it appears that the majority of courts addressing this issue have adopted the "trip specific approach," which holds that the MCS-90 endorsement is not applicable when an interstate carrier is engaged solely in intrastate commerce of nonhazardous materials during the specific trip it was engaged in at the time of the accident.[4] See e. g., *Coleman*, supra at 251 (III) (B) (identifying the trip specific approach as the

[4] See, e.g., *Coleman,* supra; *Century Indem. Co. v. Carlson*, 133 F3d 591, 600 (II) (8th Cir. 1998) (concluding that MCS-90 endorsement applied because the shipment of goods was interstate in nature); *Branson v. MGA Ins. Co.*, 673 So.2d 89, 91-92 (Fla. 5th Dist. App. 1996) (declining to apply MCS-90 endorsement to purely intrastate transportation); *Brunson v. Canal Ins. Co.*, 602 FSupp2d 711, 719 (D. S. C., 2007) (concluding that the MCS-90 endorsement does not apply to an accident that occurred when the motor carrier was engaged in a purely intrastate trip); *Progressive Gulf Ins. Co. v. Jones*, 958 FSupp2d 706, 714 - 715 (S.D. Miss. 2013) (noting that the Fifth Circuit "follows the majority approach and employs a trip-specific analysis in determining if the transport was intrastate or interstate"). Compare *Travelers Indem. Co. v. Western American Spec. Transp. Serv.*, 235 FSupp2d 522, 529-530 (A) (1) (W.D. La. 2002) (MCS-90 endorsement covering a motor carrier registered as an interstate carrier applied to intrastate trip); *Royal Indem. Co. v. Jacobsen*, 863 F. Supp. 1537, 1541-1542 (II) (D. Utah, 1994) (concluding that once issued, a MCS-90 endorsement applies regardless of the type of product being hauled on the day of the accident in question).

11

"majority approach[,]" and providing a comprehensive list of cases adopting such approach); *Progressive Gulf Ins. Co. v. Jones*, 958 FSupp 2d 706, 714 (S.D. Miss. 2013) (concluding that the trip specific approach appears to be the majority approach). Our analysis of pertinent Georgia legislation and Federal regulations leads us to agree with the majority approach that each claim must be examined individually to determine whether the coverage afforded by the MCS-90 endorsement applies to the actual vehicle involved in the accident. See *Coleman*, supra at 249 (III) (a), n. 5.

(b) *Georgia Law.* Burns argues that the trial court's order correctly concluded that the language of the Georgia Uniform Rules of the Road statute, OCGA § 40-6-10.1, indicates that the Georgia Legislature intended for MCS-90 endorsements to provide coverage for all accidents involving an interstate carrier, whether or not they were engaged in interstate commerce at the time of the accident. We cannot agree.

OCGA § 40-6-10.1 provides that

[n]o motor carrier subject to the financial responsibility requirements of the Federal Motor Carrier Safety Administration. . . , as contained in 49 C.F.R. [§] 387, shall operate any motor vehicle upon the highways of this state until such motor carrier has obtained and has in effect the minimum levels of financial responsibility prescribed by such federal regulations.

As noted above, the FMSCR regulations require compliance with the federal financial responsibility requirements only when a motor carrier is operating in interstate or foreign commerce of nonhazardous materials or interstate, intrastate, or foreign commerce involving hazardous materials. See 49 CFR §387.3 (a) - (b). Accordingly, we conclude that the language of OCGA § 40-6-10.1 requiring certain motor carriers to comply with that federal financial responsibility regime does not apply to a motor carrier engaged in the intrastate commerce of nonhazardous materials. Nor does it replace Georgia's financial responsibility regime, which sets lower minimum financial responsibility limits per accident.[5] See Ga. Comp. Rules & Regs. R. 515-16-11-.03 (establishing the minimum financial responsibility limits of $100,000 of liability insurance for injuries to a single person).

In fact, the Georgia Motor Carrier Act contemplates that a motor carrier can be engaged in *both* interstate and intrastate commerce, and does not impose federal financial responsibility limits on an interstate motor carrier that is engaged in intrastate commerce at the time of the accident. OCGA § 40-1-126, which notes that it is applicable to both interstate and intrastate commerce, provides that

---

[5] Georgia is specifically granted the right to establish its own financial responsibility regime for intrastate commerce involving nonhazardous commodities. See 49 USC § 14501 (c) (2) (A).

13

[i]n circumstances where a motor carrier is engaged in both interstate and intrastate commerce, it shall nevertheless be subject to all provisions of this part so far as it separately relates to commerce carried on exclusively in this state. It is not intended that the department shall have the power of regulating the interstate commerce of such motor carrier[] . . The provisions of this part do not apply to purely interstate commerce nor to carriers exclusively engaged in interstate commerce. *When a motor carrier is engaged in both intrastate and interstate commerce, it shall be subject to all the provisions of this part so far as they separately relate to commerce carried on in this state.*

This interpretation is confirmed by language in The Georgia Department of Public Safety Transportation Rulebook, Rule 1-387.1, which provides that the federal financial responsibility rules "apply only to interstate commerce and those intrastate carriers subject to the jurisdiction of the Federal Motor Carrier Safety Administration as provided in 49 CFR [§] 387. It is not the intent of the Department to impose federal financial responsibility limits on intrastate motor carriers not otherwise subject to 49 CFR 387."[6] 49 CFR § 387 only imposes such limits upon motor carriers engaged in intrastate commerce of hazardous materials.

---

[6] See *Ga. Dept. of Revenue v. Owens Corning*, 283 Ga. 489, 490 (660 SE2d 719) (2008) ("the interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference") (citation omitted).

Burns urges us, on public policy grounds, to adopt the alternate approach and to hold that once an MCS-90 endorsement is issued to a registered interstate carrier, that endorsement should apply regardless of whether a specific trip is intrastate or interstate. Burns argues that a Georgia citizen injured by an interstate motor carrier conducting intrastate commerce of nonhazardous materials at the time of an accident "should be given the same amount of protection as a citizen injured by the same truck, owned by the same . . . carrier, and covered by the same insurance policy, but whose cargo may be destined for another state[.]" However, we find that this public policy argument cannot trump the clear and unambiguous statutory and regulatory language addressed above. See, e. g., *Brunson*, supra at 718-719 (acknowledging the public policy argument, but concluding that "the statutes, federal regulations, and . . . caselaw" require "the conclusion that an MCS-90 endorsement does not apply to a purely intrastate trip").

Based upon the above, we find that the Georgia legislature and the Georgia Department of Public Safety did not intend to extend the federal financial responsibility regime imposed by FMSCR to purely intrastate commerce involving nonhazardous commodities. By stating that the federal financial responsibility requirements "apply only to interstate commerce and *those operations of intrastate*

15

*carriers subject to the jurisdiction of the Federal Motor Carrier Safety Administration as provided for in 49 CFR [§] 387*," the Georgia Department of Public Safety makes clear that the federal financial responsibility requirements are applicable only when a motor carrier's "operations" are subject to the jurisdiction of the federal government. See Georgia Department of Public Safety Rulebook, Rule 1-387.1. To determine what "operations" are subject to the jurisdiction of 49 CFR § 387, a court must utilize a trip-specific test.

Applying the trip-specific test to the facts of the present case, we find that the trial court erred in concluding that the coverage afforded by the MCS-90 endorsement applied in this case because it is undisputed that J. B. Trucking was engaged in a purely intrastate trip involving nonhazardous commodities at the time of the subject accident. Accordingly, we reverse the trial court's summary judgment order and final judgment to that effect.

2. As a result of our holding in Division 1, we need not address Grange's remaining enumeration.

*Judgment reversed. Doyle, C. J., and Andrews, P. J., concur.*

16