**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A2101. DAILY UNDERWRITERS OF AMERICA v. WILLIAMS.

A19A2102. DAILY UNDERWRITERS OF AMERICA v. WILLIAMS.

MCFADDEN, Chief Judge.

The issue in these companion appeals is whether Georgia law authorizes the direct actions Veronica Williams and Marleaux Williams brought against the insurer of an interstate motor carrier. One of Georgia's direct action statutes, OCGA § 40-1-112 (c), does not authorize those actions because it is applicable only to intrastate motor carriers. But the other direct action statute, OCGA § 40-2-140 (d) (4), which is applicable to interstate carriers, does authorize them. So we affirm the trial court's denials of the insurer's summary judgment motions claiming that the direct actions against it were not authorized.

1. *Facts and procedural posture.*

Viewed in the light most favorable to the nonmovants, see *Aequicap Ins. Co. v. Canal Ins. Co.*, 303 Ga. App. 508, 508 (693 SE2d 863) (2010), the evidence shows that on July 18, 2014, Veronica and Marleaux Williams were injured when a tractor-trailer driven by Edward Heard struck their car. Heard owns and operates CC&D Trucking, LLC as a sole proprietorship, and he was driving in the scope of the business of CC&D at the time of the accident. Daily Underwriters of America had issued a liability insurance policy to CC&D which was in effect at the time of the accident.

Veronica Williams, the car driver, and Marleaux Williams, the car passenger, brought separate negligence actions against Heard, CC&D, and Daily Underwriters. They cited OCGA § 40-1-112 (c) in their complaints as authorizing those direct actions against Daily Underwriters.

Daily Underwriters moved for summary judgment in each case, arguing that OCGA § 40-1-112 (c) applies only to insurers of intrastate motor carriers. Daily Underwriters contended that its insured, CC&D, was an interstate motor carrier at the time of the crash. Therefore it argued, OCGA § 40-1-112 (c) does not authorize the direct actions against Daily Underwriters.

2

In their response, the Williamses cited, among other things, OCGA § 40-2-140 as authorizing the direct actions against the insurer. The trial court denied Daily Underwriters' motions for summary judgment.

We granted Daily Underwriters' applications for interlocutory review, and these appeals followed. In Case No. A19A2101, Daily Underwriters appeals from the trial court's denial of its motion for summary judgment in the action filed by Veronica Williams. In Case No. A19A2102, it appeals from the denial of its corresponding motion in the suit filed by Marleaux Williams. Because the appeals raise the same issues, we consider them together.

2. *Direct action statutes.*

Daily Underwriters argues that direct actions against the insurer of an interstate motor carrier are not authorized in Georgia. It is true that the general rule in Georgia is that a liability insurer may not be joined directly as a defendant in an action for damages against its insured. *Haezebrouck v. State Farm Mut. Ins. Co.*, 252 Ga. App. 248, 249 (1) (555 SE2d 764) (2001). But exceptions for motor carriers to that general rule are provided by two separate direct action statutes: OCGA §§ 40-1-112 (c) and 40-2-140 (d) (4). See Frank E. Jenkins III & Wallace Miller III, Ga. Automobile Insurance Law § 46:1 (b) (1) (2019-2020 ed.).

3

As explained below, OCGA § 40-1-112 (c), when read together with OCGA § 40-1-126, authorizes direct actions against insurers of motor carriers engaged in intrastate commerce — but not against insurers of motor carriers engaged in purely interstate commerce. OCGA § 40-2-140 (d) (4), however, does authorize direct actions against insurers of motor carriers engaged in interstate commerce.

(a) *OCGA § 40-1-112 (c).*

(i) *The statute construed.*

OCGA § 40-1-112 is found in the Georgia Motor Carrier Act of 2012. See OCGA §§ 40-1-50 through 40-1-200. OCGA § 40-1-112 (a) requires a "motor carrier of household goods or property or passengers" to file with the Department of Public Safety a certificate of insurance "evidencing a policy of indemnity insurance by an insurance company licensed to do business in this state . . . . The failure to file any form required by the department *shall not diminish the rights of any person to pursue an action directly against a motor carrier's insurer*." (Emphasis supplied.) The right to pursue such a direct action against an insurer is set out in OCGA § 40-1-112 (c), which provides: "It shall be permissible under this part [i.e., Title 40, Chapter 1, Article 3, Part 2] for any person having a cause of action arising under this part *to join*

4

*in the same action the motor carrier and the insurance carrier, whether arising in tort or contract.*" (Emphasis supplied.) As this court has explained,

> [t]he purpose of permitting joinder of the insurance company in a claim against a common carrier is to further the policy of the Motor Carrier Act, that is, to protect the public against injuries caused by the motor carrier's negligence. The intent of this [s]tate's motor carrier laws is that the insurer is to stand in the shoes of the motor carrier and be liable in any instance of negligence where the motor carrier is liable.

*Mornay v. Nat. Union Fire Ins. Co. of Pittsburgh*, 331 Ga. App. 112, 113 (769 SE2d 807) (2015) (citation and punctuation omitted).

Within the same part of the Georgia Motor Carrier Act is a disavowal of any apparent effort by the state to regulate purely interstate commerce. OCGA § 40-1-126 provides:

> In circumstances where a motor carrier is engaged in both interstate and intrastate commerce, it shall nevertheless be subject to all the provisions of this part [i.e., Title 40, Chapter 1, Article 3, Part 2] so far as it separately relates to commerce carried on exclusively in this state. It is not intended that the department shall have the power of regulating interstate commerce of such motor carrier, except to the extent expressly authorized by this part as to such commerce. *The provisions of this part do not apply to purely interstate commerce nor to carriers exclusively engaged in interstate commerce.* When a motor carrier is engaged in

5

both intrastate and interstate commerce, it shall be subject to all the provisions in this part so far as they separately relate to commerce carried on in this state. (Emphasis supplied.)

The foregoing "statutes relating to the same subject matter are in pari materia and must be construed together and harmonized whenever possible." *Long v. Dev. Auth. of Fulton County*, 352 Ga. App. 815, 821 (3) (b) (835 SE2d 717) (2019) (citation omitted). In so construing these code sections, "we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature." *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003) (citations omitted). See also OCGA § 1-3-1 (a). And because "the direct action statute is in derogation of common law, . . . its terms require strict compliance." *Mornay*, supra. at 113 (citation and punctuation omitted).

With these principles in mind, we find that the plain language of OCGA § 40-1-112 (c) expressly allows an injured party to file a direct action against a motor carrier's insurance carrier for causes of action arising "under this part," i.e., Title 40, Chapter 1, Article 3, Part 2. And the plain language of OCGA § 40-1-126 clearly

6

provides that "[t]he provisions of this part do not apply to purely interstate commerce nor to carriers exclusively engaged in interstate commerce." So construed together with OCGA § 40-1-112, it is apparent that the plain language of OCGA § 40-1-126 evinces the legislative intent that the direct action provision of OCGA § 40-1-112 (c) does not apply to purely interstate commerce or to a carrier engaged exclusively in interstate commerce.

(ii) *The statute applied.*

Daily Underwriters contends that its insured, CC&D, was engaged exclusively in interstate commerce at the time of the accident and therefore OCGA § 40-1-112 (c) does not authorize the direct actions against the insurer. Since we are reviewing a summary judgment ruling, we must determine if there exists a genuine issue of material fact as to whether CC&D was an interstate carrier at the time of the accident. See OCGA § 9-11-56 (c) (summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law). We conclude that under the undisputed facts and as a matter of law, that it was an interstate carrier.

The record shows that at the time of the accident, Heard was driving his tractor-trailer back to CC&D's place of business in Bainbridge, Georgia. He had picked up

7

a load in Charlotte, North Carolina; delivered it to a drop-off point in Monroe, Georgia; and was driving back to Bainbridge when the accident occurred. The Williamses argue that a fact question exists as to whether Heard was making an intrastate or interstate delivery at the time of the accident because he had delivered the load to a store in Georgia and was on his way back to his home in Georgia at the time of the accident. They also argue that because Heard testified that he "very rarely" made deliveries within Georgia, he should not be considered a purely interstate carrier.

In distinguishing interstate from intrastate carriers, we have adopted a "trip specific" approach. *Grange Indem. Ins. Co. v. Burns*, 337 Ga. App. 532 (788 SE2d 138) (2016). In *Grange*, this court reversed the trial court's order granting summary judgment to a driver injured in an accident with a tractor-trailer. This court held that the trial court erred in concluding that insurance coverage afforded by a federal endorsement applied because the truck was engaged in a purely intrastate trip involving nonhazardous commodities. In so holding, we acknowledged the Georgia Motor Carrier Act's distinction between interstate and intrastate motor carriers when it came to federal financial responsibility limits. In interpreting OCGA § 40-1-126 (c), this court held that the determination of whether the rules regarding the federal

8

endorsement should govern the accident depended on whether the carrier was acting as an interstate or an intrastate carrier at the time of the accident. This court adopted a "trip specific" approach, which requires an analysis of whether the carrier was engaged in interstate or intrastate commerce "during the specific trip it was engaged in at the time of the accident." Id. at 539-541 (1) (b) (footnote omitted).

Federal case law, which we find persuasive (although it does not bind us, see *Hennly v. Richardson*, 264 Ga. 355, 357 (2) (444 SE2d 317) (1994), has expanded upon that approach. In deciding whether the particular movement of freight can be categorized as an intrastate or an interstate trip, "the intention existing at the time the movement starts governs and fixes the character of the shipment. Temporary stoppage within the state, made necessary in furtherance of the interstate carriage, does not change its character." *Swift Textiles, Inc. v. Watkins Motor Lines*, 799 F.2d 697, 699 (11th Cir. 1986) (citations and punctuation omitted). See also, *Roberts v. Levine*, 921 F2d 804, 812 (II) (A) (8th Cir. 1990) ("[T]he determination of whether transportation between two points in a [s]tate is interstate (or foreign) or intrastate in nature depends on the 'essential character' of the shipment. . . . Crucial to this determination is the shipper's fixed and persisting intent at the time of shipment. . . . Intent is ascertained

9

from all the facts and circumstances surrounding the transportation.") (citation and punctuation omitted).

Here, it is clear that when the trip began, Heard's fixed and persisting intent at the time of shipment was to pick up a load of goods in North Carolina and drop it off at a store in Georgia. See *Swift Textiles*, supra at 812. The fact that he had to drive his truck home after the load was delivered does not convert the purpose of the travel into an intrastate trip. So we conclude that there is no material issue of fact as to whether Heard and CC&D were engaged in an interstate trip at the time of the accident. Because Heard and CC&D were engaged exclusively in interstate commerce at the time of the accident, the direct action provision of OCGA § 40-1-112 (c) does not authorize including Daily Underwriters as a named defendant in the underlying actions. So we conclude that the trial court's denial of summary judgment to Daily Underwriters was not supported by that direct action statute.

(b) *OCGA § 40-2-140 (d) (4).*

But the denial of summary judgment will be affirmed if it is right for any reason. *Chatham Area Transit Auth. v. Brantley*, 353 Ga. App. 197, 208 (3) (a) (834 SE2d 593) (2019). Here, the direct actions against Daily Underwriters were

authorized by Georgia's other direct action statute, OCGA § 40-2-140 (d) (4). So the denial of summary judgment was correct.

(i) *Waiver.*

Daily Underwriters argues that we should not consider whether the direct actions are authorized by OCGA § 40-2-140 (d) (4) because in their complaints, the Williamses cited only OCGA § 40-1-112. This, the appellant argues, prohibits consideration of OCGA § 40-2-140 (d) (4) because it would exceed the scope of notice pleading. We disagree.

While it is often good advocacy to cite supporting statutory authority in a complaint, we aware of no authority for the proposition that such citations are required and the appellant has cited no such authority. On the contrary, the Civil Practice Act requires only a "short and plain statement of [the plaintiff's] claim." *Bush v. Bank of N. Y. Mellon*, 313 Ga. App. 84, 91 (720 SE2d 370) (2011) (punctuation and footnote omitted). "There is no magic in nomenclature, and we judge pleadings, motions and orders not by their name but by their function and substance, being always mindful to construe such documents in a manner compatible with the best interests of justice." *Fiffee v. Jiggetts*, ___ Ga. App. ___ (2) (Case No. A20A0131, decided February 18, 2020) (citation and punctuation omitted). Per force,

11

as arguments are refined through dialectic exchanges in the adversary process, there is no duty to update the initial pleadings to reflect such refinements. Imposing such a requirement would be contrary to the statutory direction that the Civil Practice Act, is to "be construed to secure the just speedy, and inexpensive determination of every action." OCGA § 9-11-1. Here, the complaints set forth plain statements of the plaintiffs' claims, including their assertions of direct actions against the insurer. Daily Underwriters was clearly put on notice of the actions against it, and we will not allow an overbroad and unduly rigid conception of waiver to lead us to create an idiosyncratic precedent that disregards controlling legal authority. Accordingly, we consider whether the direct actions against the insurer are authorized by OCGA § 40-2-140 (d) (4).

(ii) *The statute construed.*

OCGA § 40-2-140, was enacted "as part of Georgia's effort to comply with the implementation of the federal Unified [Carrier] Registration Act of 2005." Frank E. Jenkins III & Wallace Miller III, Ga. Automobile Insurance Law § 46:1 (b) (3) (2019-2020 ed.). Among other things, it requires "[e]very foreign or domestic motor carrier . . . that engages in interstate commerce in this state" to register and pay fees required by the federal act. OCGA § 40-2-140 (c). It also contains the following direct action

12

provision: "Any person having a cause of action, whether arising in tort or contract, under this Code section may join in the same cause of action the motor carrier and its insurance carrier." OCGA § 40-2-140 (d) (4).

While our state appellate courts have not yet been called upon to construe the direct action provision of OCGA § 40-2-140, "federal courts have consistently held that [it applies] to [insurers of] both interstate and intrastate carriers." *Mitchell v. Dixie Transp.* 2019 U. S. Dist. LEXIS 200117 *7 (IV) (A) (N. D. Ga. 2019) (citations omitted). See Frank E. Jenkins III & Wallace Miller III, Ga. Automobile Insurance Law § 46:1 (b) (3) (2019-2020 ed.) As those federal courts have held, "the plain language of the statute indicates that injured parties are able to join the insurers of interstate motor carriers." Frank E. Jenkins III & Wallace Miller III, Ga. Automobile Insurance Law § 46:1 (b) (3) (2019-2020 ed.).

> The Eleventh Circuit also more recently echoed this principle in *Wiedeman v. Canal Ins. Co.*, 770 F. Appx. 497, 499 n.1 (11th Cir. 2019) (per curiam). In that case, the injured plaintiff asserted a direct claim against the insurance carrier. The insured motor carrier was a federally-registered motor carrier authorized to transport goods in interstate commerce, with its principal place of business in South Carolina. The district court found the joinder of the insurance company proper under § 40-2-140. On appeal, the [Eleventh Circuit] Court of Appeals recognized that the Georgia direct-action statute permits suits against insurers of interstate and foreign corporation commercial motor carriers. In affirming the district court's ruling, the Eleventh Circuit

13

gave its blessing to this oft-held conclusion, which applies equally to [the insurer's] situation in this matter involving an interstate motor carrier.

*Mitchell*, supra at *9 (IV) (A) (citations and punctuation omitted).

As noted above, although we are not bound by federal decisions, we find their reasoning persuasive. See *Hennly*, supra. So even though Heard and CC&D were engaged in interstate commerce at the time of the accident, we find that the joinder of Daily Underwriters as a defendant in the underlying actions was authorized by the direct action provision of OCGA § 40-2-140 (d) (4). The trial court's denial of summary judgment to Daily Underwriters was therefore correct.

(iii) *Repeal by implication.*

We note that Daily Underwriters has further argued that OCGA § 40-2-140 (d) (4) was repealed by implication by the Georgia Motor Carrier Act. However, "repeal by implication is not favored[.]" *E-Lane Pine Hills, LLC v. Ferdinand*, 277 Ga. App. 566, 568 (627 SE2d 44) (2005) (citation and punctuation omitted). Moreover, such repeal by implication is held when a statute "is clearly inconsistent and contrary to the most recently enacted law or where [a] later enactment appears to cover the entire subject matter and give expression to the whole law on the subject." Id. (citation and punctuation omitted). Contrary to the appellant's argument, OCGA § 40-2-140 is not

14

even part of the Georgia Motor Carrier Act. See OCGA §§ 40-1-50 et seq. Rather, as noted above, it is a distinct part of the code concerning administration of the federal Unified Carrier Registration Act. Daily Underwriters has not shown that the Georgia Motor Carrier Act covers the entire subject matter of compliance with that federal act, so we find no repeal by implication of OCGA § 40-2-140.

*Judgments affirmed. McMillian, P. J., concurs in the judgments only. Senior Appellate Judge Herbert E. Phipps dissents.* \*

**THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**

# In the Court of Appeals of Georgia

A19A2101. DAILY UNDERWRITERS OF AMERICA v. WILLIAMS.

A19A2102. DAILY UNDERWRITERS OF AMERICA v. WILLIAMS.

PHIPPS, Senior Appellate Judge, dissenting.

I respectfully dissent to the majority's opinion because the Williamses have waived the application of OCGA § 40-2-140 to file a direct action against Daily Underwriters in the instant case. I believe that the trial court's denial of summary judgment was in error.

The majority correctly concludes that the Williamses were not authorized to file a direct action against Daily Underwriters pursuant to the Georgia Motor Carrier Act (OCGA § § 40-1-112 (c), 40-1-126) because CC&D was engaged in purely interstate commerce at the time of the accident.

However, the majority opinion incorrectly concludes that the language of OCGA § 40-2-140 (d) (4) authorizes the Williamses to file a direct action against Daily Underwriters. The Williamses' complaints sought only a direct action against Daily Underwriters pursuant to the Georgia Motor Carrier Act, OCGA §§ 40-1-112 (c), 40-1-127. They did not mention using the Administration of Federal Unified Carrier Registration Act of 2005, OCGA § 40-2-140, as authority to file a direct action against Daily Underwriters until it was briefly mentioned in their response brief to Daily Underwriters' summary judgment motion. It is well-settled that "a completely new claim made for the first time in response to the motion for summary judgment does not satisfy even the liberal requirements of the Georgia Civil Practice Act for notice pleading." *Johannes v. Mitchell*, 220 Ga. App. 102, 104 (1) (469 SE2d 255) (1996). Accord *R. W. Holdco, Inc. v. Johnson*, 267 Ga. App. 859 (601 SE2d 177) (2004). Although there is

> a liberal pleading standard for civil complaints . . . [t]his standard . . . does not afford plaintiffs with an opportunity to raise new claims at the summary judgement stage. Indeed, the simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. . . At the summary judgment stage, the proper

2

procedure for plaintiffs to assert a new claim is to amend the complaint[.]

*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir.) (2004) (interpreting the Federal Rules of Civil Procedure).

A claim seeking to join a defendant insurance company pursuant to the direct action statute of the Georgia Motor Carrier Act is a different from that of a plaintiff seeking to join a defendant insurance company pursuant to the Administration of Federal Unified Carrier Registration Act of 2005, OCGA § 40-2-140. As the majority opinion correctly notes, "OCGA § 40-2-140 is not even part of the Georgia Motor Carrier Act. See OCGA § 40-1-50 et seq. Rather, . . . it is a distinct part of the code concerning administration of the federal Unified Carrier Registration Act." If the Plaintiffs in the instant case wanted to file a direct action against Daily Underwriters under the authority of the Administration of Federal Unified Carrier Registration Act of 2005, they should have amended their complaint in order to do so. Because the Plaintiffs failed to do so, they cannot rely on OCGA § 40-2-140 to survive summary judgment.

For these reasons, I respectfully dissent.